## THE STATE v. BELL.

1. **Criminal Law:** INTENT : DRUNKENNESS : BURGLARY.   While the criminal intent to commit the crime of breaking and entering a dwelling-house in the night-time with intent to commit a larceny, might sufficiently exist in the mind of a drunken person, and while, in such case, his drunkenness would be no excuse, yet if his intoxication was such, that, under the influence thereof, he entered the house, with no intent to commit crime, then he would not be guilty of the crime charged.

2. —— The law does not necessarily imply the criminal intent in a prosecution of this character from the simple fact of breaking and entering ; but whether he had the intent charged, or whether he was capable, in his intoxicated condition, of forming any, are questions of fact for the jury.

*Appeal from Des Moines District Court.*

### FRIDAY, JULY 29.

. THE indictment charges the crime of entering, on the night of, etc., the house of, etc., with intent to commit the crime of larceny. There was testimony tending to show that defendant was a man of good moral character, and had never before been charged with crime ; that on the evening before the alleged burglary (New Year's eve) he went with some friends and acquaintances and drank with them until about 11 o'clock, and was drunk when found in the house, where he was arrested and taken to jail.

The court instructed the jury, that, " if defendant entered the house with intent to commit the crime of larceny, it makes no difference in law whether, when he so entered, he was drunk or sober. Drunkenness is no excuse for the commission of crime, unless it has been of so long duration as to amount to a fixed insanity, or to such an extent as to render the party accused incapable of acting or thinking for himself."

This instruction, asked by defendant, was refused : "If you find from the evidence that at the time defendant was found in the house he was drunk, and got in there through drunkenness, without knowing where he was, and with no intent to steal or commit crime, then you should acquit."

To reverse the conviction following this instruction and refusal, defendant prosecutes this appeal.

*Hall & Baldwin* for the appellant.

*H. O'Connor*, attorney-general, for the state.

WRIGHT, J.—The offense here charged is defined by the statute to be the entering, without breaking, a dwelling-house, in the night-time, *with intent* to commit a felony. Rev. § 4232. The *intent* to commit the felony is, then, one essential element, and without it the offense would not be complete. Starting with this fundamental proposition, it seems to us, in view of the instructions given and refused, that this conviction cannot be sustained. That given (though, perhaps, abstractly correct) was scarcely just to defendant, and was well calculated to mislead (and especially so after the refusal of that asked by defendant), inasmuch as it, in effect, treats as unimportant, or fails to present in its proper and appropriate place, the material fact upon which defendant relied for his exculpation. To say, that if the *intent* existed, it would make no difference whether the accused was drunk or sober, is correct enough ; and yet, the true inquiry was, whether, under the circumstances, *there could have been the criminal intent.* This intent, it is granted, may exist in the mind of one under the influence of intoxicating liquor, and if so, intoxication is no excuse. But, instead of thus presenting the case to the jury, they were left to deduce, as a *conclusion of law*, not as a *fact*

to be found, that which constitutes the whole crime. If defendant's drunkenness was such as to take from his act the criminal *intent*, then the act was, as to this offense, not criminal, and the jury should have been so told. If, however, this instruction could be overlooked, as possibly not prejudicing defendant's rights, there still remains that refused, which, in our opinion, asserts the law, was applicable to the facts, and, under the circumstances, should have been given.

Without the felonious intent, as already suggested, the crime charged was not complete ; and if defendant was so drunk (there being no prior criminal intent) as not to know where he was, and with no intent to commit a felony, he was not guilty. If, under such circumstances, he had taken the property of another, there being the absence of the requisite specific legal intent to steal, it would not have been larceny ; and if not, neither would the entering be burglàrious within the meaning of the statute. From the very nature of the offense, there must be the criminal intent, and this cannot exist in the mind of one who is too drunk to entertain a specific intent of any kind. The doctrine, as thus stated, we do not understand to be controverted by the state, the issue being as to its applicability, or whether the refusal could possibly have worked prejudice to defendant's rights.

In our opinion, the iustruction was applicable, and the principle involved was not covered by the instructions in chief. Of course, we are not holding that defendant would be excused if he was capable of and did conceive the design to commit this offense. Or, as the same thought is sometimes expressed, he would not be exculpated if he was possessed of his reason, and capable of knowing and determining whether his act was criminal or otherwise. If, too, the drunkenness was voluntary, and defendant had in view this, or any other felony, he

The State v. Bell.

would not be protected. The drunkenness, however, is a proper circumstance, and should be weighed by the jury in determining whether there existed the specific intent to commit the felony charged. Whether he had the intent charged, whether he was capable of conceiving it, or whether he was so completely overcome by his debauch as to be incapable of forming any purpose, were questions for the jury. If, as claimed by defendant, he blundered into this house through a drunken mistake, under such circumstances as to show an entire absence of reason, or such as would indicate inability to form any definite purpose, and especially of committing a larcency, then there was no guilt, at least not the offense here charged. The accused may have been guilty of a very great *fault*, but there is in reason and law a very clear distinction between this and the *intentional* injury or crime contemplated by the statute. Ray's Med. Jur. of Ins. ch. 25, and see sections 453, 455, 456.

The general doctrine is of course conceded, that voluntary intoxication furnishes no excuse for crime committed under its influence. And the rule is just as reasonable, and by no means in conflict with that stated, which declares, that if an offense from its peculiar nature is only committed when the act is joined with the intent, then if by one without the intent, who by drink is incapable of entertaining it, and never yields thereto the sanction of his will, the particular offense is not committed, for of whatever defendant is guilty, he is not of this, because of the absence of an essential ingredient. Or, as the same doctrine, general and special, is stated elsewhere : " Intoxication is no excuse for crime, when the offense consists merely in doing a criminal act, without regarding intention. But when an act done is innocent in itself, and criminal only when done with a corrupt or malicious motive, a jury may, from intoxication. presume there was

The State v. Bell.

a want of criminal intention." *United States* v. *Rouden-bush,* 1 Bald. 514. Or, as in another case : " Where the nature and essence of a crime are made by law to depend upon the peculiar state and condition of the criminal's mind at the time, and with reference to the act done, drunkenness, as a matter of fact affecting such state and condition of the mind, is a proper subject for consideration by the jury. The question in such a case is, what is the mental status ? *Swan* v. *The State,* 4 Hump. 136.

The law does not imply the intent in cases of the kind, from the breaking and entering, or entering without breaking. If life, however, be taken, by the use of a deadly weapon, the law implies malice, and there would hence be murder, though the perpetrator was drunk. This is the more evident when we know that one may be guilty of murder without intending to take life, as he may in other cases intend to take life and yet not commit a crime. Or, still again, drunkenness may quite supply the place of malice aforethought, which may be general, not special, but it cannot that of a specific intent. Bishop's Cr. Law, vol. 1, §§ 389, 490, 491; notes and cases there cited. We confess that the doctrine touching cases of this character is not placed upon the clearest ground in the books. Looking at the question, however, from the stand-point of reason and principle, unassisted by authority, we believe the instruction should have been given, and the judgment below is, hence,

Reversed.