# IN THE SUPREME COURT OF IOWA

No. 12–2122

Filed March 20, 2015

**STATE OF IOWA,**

    Appellee,

vs.

**MARIO GUERRERO CORDERO,**

    Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

A criminal defendant challenges his convictions and sentences for first-degree murder and attempt to commit murder. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AND SENTENCE AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney General, John P. Sarcone, County Attorney, and Jaki L. Livingston, Assistant County Attorney, for appellee.

**CADY, Chief Justice.**

In this appeal involving convictions for first-degree murder and attempt to commit murder, the defendant asserts numerous claims of error arising out of his trial and sentencing. These claims included insufficiency of evidence to support the convictions, trial court error in refusing to give a jury instruction, ineffective assistance of trial counsel, and insufficient reasons for the imposition of consecutive sentences. We transferred the case to the court of appeals. The court of appeals addressed all the issues on appeal and affirmed the judgment and sentence of the district court. On further review, we only address the issue concerning the jury instruction. The issue presented is whether the district court abused its discretion by failing to give a jury instruction at trial on the defense of intoxication under the record in this case. We conclude the district court did not abuse its discretion. We affirm in part and vacate in part the opinion of the court of appeals and affirm the judgment and sentence of the district court.

## I. Background Facts and Proceedings.

Mario Guerrero Cordero lived in Des Moines in 2008. He was distantly related to Miguel and Manuel Cano Basurta, brothers who also lived in Des Moines. Miguel and Manuel worked at an automobile repair shop called El Tarasco's. In May 2008, Guerrero Cordero damaged a truck belonging to a customer of the shop when he struck it with his vehicle after entering the parking lot. Miguel demanded that Guerrero Cordero pay for the damage. Guerrero Cordero failed to pay, which upset Miguel and caused tension between the two men. This tension reached a tipping point on Independence Day of that year.

On the morning of July 4, Miguel and Manuel went to work at El Tarasco's. After friends arrived at the shop, the brothers stopped

working and began to socialize with them. The fellowship included the consumption of beer. Guerrero Cordero also arrived at the shop, and Miguel and Manuel asked him to leave. Guerrero Cordero and Miguel began to argue, and eventually, Miguel insulted Guerrero Cordero's family and challenged him to a fight. However, no physical confrontation occurred, and Guerrero Cordero left the shop without incident.

After leaving El Tarasco's, Guerrero Cordero went to an automotive repair shop owned by Rogelio Carlos Basurto, another distant cousin. While Guerrero Cordero was at Basurto's shop, Guerrero Cordero displayed a handgun and ammunition to those present before placing the gun in his waistband. When he and Basurto left the shop together to buy beer, Guerrero Cordero told Basurto that he had wanted to shoot Miguel the other day, but did not do so because they were family. Basurto told Guerrero Cordero he should not think about hurting family and that the gun would only bring him trouble. Basurto left the shop late in the afternoon. Guerrero Cordero was still present. He was drinking beer, but Basurto did not believe he was drunk. At some point, Guerrero Cordero returned to El Tarasco's, where Miguel again asked him to leave. He complied with the request. Manuel subsequently saw Guerrero Cordero at an apartment complex in the early evening and told him not to return to the shop until he could talk with Miguel.

Despite the admonition, Guerrero Cordero returned to El Tarasco's once again.[1] Upon entering the shop, he said, "What's up?" He then pulled the gun from his waistband and fired several shots at Miguel. Miguel was hit by three shots and fell to the floor. Guerrero Cordero

---

[1]Conflicting testimony suggested Guerrero Cordero returned anywhere from ten minutes to two hours after leaving El Tarasco's.

then began firing at the others gathered in the shop, who had begun to flee.  As Guerrero Cordero turned to leave the shop, he shot Hector Casillas, hitting him in the foot and causing him to fall.  Casillas continued to flee, and Guerrero Cordero shot him again, this time in the back as he ran away.  Guerrero Cordero then fled the scene.  Casillas was taken to the hospital for surgery and survived.  Miguel died of his wounds shortly after he was transferred to the hospital trauma center.

Police executed a search warrant on Guerrero Cordero's home on July 5.  They found ammunition and the pants he had worn the previous day.  Two days later, Guerrero Cordero's roommate led police to a buried handgun, which forensics testing was later able to match as having fired five bullets recovered at the scene, including one removed from Miguel's body.  The police also discovered Guerrero Cordero had purchased a ticket to Mexico under an assumed name and left Des Moines.  They subsequently began a lengthy process of obtaining an international warrant for the arrest of Guerrero Cordero.  Three years later, in 2011, Mexican authorities arrested Guerrero Cordero on the international warrant.  He was eventually extradited to the United States.

The State of Iowa charged Guerrero Cordero with first-degree murder and attempt to commit murder.  At trial, testimony was presented about the consumption of alcoholic beverages on July 4 by the persons present at El Tarasco's and Basurto's.  Miguel and many of the persons who spent the day at El Tarasco's were intoxicated by the time the shooting started.  There were coolers of beer at the shop and numerous beer cans.  Multiple witnesses testified that Guerrero Cordero had been drinking beer during the day, but nearly all of them said he was not intoxicated or did not appear intoxicated.  Not all witnesses were asked at trial if they believed Guerrero Cordero was intoxicated.  Only

one witness, who had never met Guerrero Cordero before and was himself intoxicated at the time of the shooting, testified Guerrero Cordero was "probably" intoxicated. Photographs of the inside of Guerrero Cordero's truck revealed an unopened can of beer and unopened bottle of beer, as well as a single open can of beer in the cup holder. The investigating officer did not question the witnesses after the shooting about the level of intoxication of those present at the time of the shooting, but did note every witness he talked with was coherent and able to form sentences to describe what had occurred.

At the close of the State's evidence, Guerrero Cordero moved for a judgment of acquittal on both charges. He claimed the evidence failed to establish he had the specific intent to commit either crime based on either intoxication or provocation. The trial court denied the motion.

At the close of all of the evidence at trial, Guerrero Cordero requested a jury instruction on the defense of intoxication. This was the first time the defense was formally raised. The court denied the request. It found the evidence did not rise to the level to support an intoxication instruction. Guerrero Cordero also renewed his motion for judgment of acquittal, which the court denied.

The jury found Guerrero Cordero guilty of the first-degree murder of Miguel Cano Basurto and the attempt to commit the murder of Hector Casillas. For the conviction of murder in the first degree, the court sentenced Guerrero Cordero to life imprisonment without the possibility of parole. For the conviction of attempt to commit murder, the court sentenced Guerrero Cordero to twenty-five years in prison with parole eligibility after serving seven-tenths of the sentence. The court ordered the sentences be served consecutively.

Guerrero Cordero appealed and raised four claims. First, he asserted the evidence was insufficient to allow a reasonable finder of fact to conclude he committed the crimes of first-degree murder and attempt to commit murder. Second, he argued the trial court erred in denying his request to instruct the jury on the defense of intoxication. Third, he contended the trial court erred by giving insufficient reasoning for its decision to impose consecutive sentences. Finally, he claimed trial counsel was ineffective in failing to notify the State of his intent to rely on intoxication as a defense.

We transferred the case to the court of appeals. The court of appeals affirmed the district court. It denied the claims of insufficiency of the evidence, sentencing abuse of discretion, and ineffective assistance of counsel. However, the court found the trial court erred in refusing to give the requested intoxication instruction, but concluded Guerrero Cordero was not prejudiced by the refusal because he still presented his defense on intoxication to the jury. We granted Guerrero Cordero's request for further review.

## II. Standard of Review.

"We review challenges to jury instructions for correction of errors at law." *State v. Frei*, 831 N.W.2d 70, 73 (Iowa 2013); *see also* Iowa R. App. P. 6.907. Yet, "[w]e review the related claim that the trial court should have given the defendant's requested instructions for an abuse of discretion." *Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006). Discretion is afforded the trial court in this instance because the decision involves an assessment of the evidence in the case. "When weighing sufficiency of evidence to support a requested instruction, we construe the evidence in a light most favorable to the party seeking submission." *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994). " 'Error

in giving or refusing to give a jury instruction does not warrant reversal unless it results in prejudice to the complaining party.'" *Hagenow v. Schmidt*, 842 N.W.2d 661, 670 (Iowa 2014) (quoting *Koenig v. Koenig*, 766 N.W.2d 635, 637 (Iowa 2009)). "'When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice.'" *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010) (quoting *State v. Gansz*, 376 N.W.2d 887, 891 (Iowa 1985)). "'Errors in jury instructions are presumed prejudicial unless "the record affirmatively establishes there was no prejudice."'" *Asher v. Ob-Gyn Specialists, P.C.*, 846 N.W.2d 492, 496 (Iowa 2014) (quoting *State v. Murray*, 796 N.W.2d 907, 908 (Iowa 2011)).

"On further review, we have the discretion to review any issue raised on appeal." *Marin*, 788 N.W.2d at 836. We will only address the issue regarding the proposed jury instruction on intoxication. We let the court of appeals opinion stand as the final decision on the other three issues. *See State v. Walker*, 856 N.W.2d 179, 184 (Iowa 2014) ("[W]e have discretion to let the court of appeals decision stand as the final decision on one or more issues.").

**III. Analysis.**

Guerrero Cordero argues the district court erred by refusing to give an instruction describing the affirmative defense of intoxication.[2] We ultimately conclude this decision did not constitute error.

---

[2]We have often noted that this is not a true defense, but our rules of criminal procedure describe it as such. Iowa R. Crim. P. 2.11(11)(*c*) ("If defendant intends to rely upon the defense of intoxication . . . ."). *But see State v. Broughton*, 425 N.W.2d 48, 49 (Iowa 1988) ("Intoxication, of course, is not a complete defense to a crime . . . ."). Intoxication does not provide an affirmative exculpatory defense, but is instead a partial

**A. The Defense of Intoxication.** Historically, the intoxicated state of an offender during the commission of a crime was not considered a defense or mitigating circumstance but, instead, was often an aggravating circumstance of the offense. *See Montana v. Egelhoff*, 518 U.S. 37, 44–45, 116 S. Ct. 2013, 2018, 135 L. Ed. 2d 361, 368–69 (1996) (plurality opinion) (describing the history of intoxication in English and early American cases). During the nineteenth century, this early common law rule gradually shifted to a rule that permitted intoxication to be used by a fact finder to consider the ability of a defendant to form the specific intent necessary to commit a crime. *Id.* at 46–47, 116 S. Ct. at 2019, 135 L. Ed. 2d at 370. We adopted this rule in 1870. *State v. Bell*, 29 Iowa 316, 317–18 (1870). In *Bell*, our early court, while conceding that voluntary intoxication is not an excuse for the crime committed, stated:

> The drunkenness, however, is a proper circumstance, and should be weighed by the jury in determining whether there existed the specific intent to commit the felony charged. Whether he had the intent charged, whether he was capable of conceiving it, or whether he was so completely overcome by his debauch as to be incapable of forming any purpose, were questions for the jury.

*Id.* at 319. Thus, before intoxication could prevent a finding of specific intent, the offender not only had to be intoxicated, but so intoxicated that he or she could no longer reason and was incapable of forming a felonious intent. *See id.* at 318–19. The resolution of the question was entrusted to the jury based on the facts of each case.

From the beginning, the defense has been applied in Iowa only to specific-intent crimes, not those of general intent. "If [the accused] were

---

defense only relating to one of the several elements that need to be proven in a criminal prosecution. *Broughton*, 425 N.W.2d at 49.

in such stupor that he was incapable of deliberation, premeditation, or of forming a specific design, it is manifest that he could not have been guilty of the offense of higher degree." *State v. Wilson*, 166 Iowa 309, 321, 144 N.W. 47, 52 (1913), *amended by* 166 Iowa 326, 147 N.W. 739 (1914). Yet, when the act is criminal in itself, the capacity of the offender to form specific intent has no bearing on guilt. *See State v. Hall*, 214 N.W.2d 205, 208–09 (Iowa 1974) (explaining that intoxication does not negate malice for second-degree murder); *see also State v. Caldwell*, 385 N.W.2d 553, 557 (Iowa 1986) ("Voluntary intoxication may not, however, reduce a charge when the crime does not require a specific intent."). Therefore, if intoxication negates the specific-intent element of a crime, the offender can only be found guilty of a lesser included offense consisting of the act without the intent. *See, e.g., Wilson*, 166 Iowa at 321, 144 N.W. at 52 (explaining that an unexplained killing is presumed to be second-degree murder and that intoxication can only have a bearing on the specific intention that would elevate the killing to a first-degree murder). Specific intent not only requires the defendant to be aware of doing an act, but doing it with a specific purpose in mind. *State v. Rinehart*, 283 N.W.2d 319, 320–21 (Iowa 1979).

We have traditionally required a high level of intoxication to support a finding of no specific intent.

> Mental disability, arising from the use of intoxicants, is a matter of degree. Partial drunkenness does not make impossible the formation of said criminal object. Therefore, the 'intoxication' or 'drunkenness' must be to the extent that the designing or framing of such purpose is impossible.

*State v. Patton*, 206 Iowa 1347, 1348, 221 N.W. 952, 952 (1928). We similarly required a high degree of intoxication in *State v. Wilson*, 234 Iowa 60, 76, 11 N.W.2d 737, 745–46 (1943):

Intoxication is a matter of degree. . . . The law does not specify the degree or the percentage of intoxication essential to sustain this defense, but it does require that it be such as to render the accused incapable of the requisite specific intent. He may be under the influence of intoxicating liquor, but he will not be absolved of criminal responsibility if he still possesses mental capacity to entertain the intent. Mere intoxication is not sufficient. Neither is it enough that he had been drinking liquor.

In 1979, the legislature codified the intoxication defense. This statute stated:

The fact that a person is under the influence of intoxicants or drugs neither excuses the person's act nor aggravates his or her guilt, but may be shown where it is relevant in proving the person's specific intent or recklessness at the time of the person's alleged criminal act or in proving any element of the public offense with which the person is charged.

Iowa Code § 701.5 (1979). We subsequently concluded this statutory rule was "substantially a codification of prior law" and have applied it using the same analysis under the common law rule. *State v. Collins*, 305 N.W.2d 434, 437 (Iowa 1981).[3] The legislature has not changed its statutory rule since it was enacted.[4]

**B. Sufficiency of Evidence to Merit the Instruction.** Guerrero Cordero requested the district court to instruct the jury on intoxication consistent with Iowa State Bar Association criminal jury instruction 200.14. His requested instruction provided:

Defendant claims he was under the influence of intoxicants or drugs at the time of the alleged crime. The fact that a person is under the influence of intoxicants or drugs does

---

[3]Scott A. Anderegg discussed the codification of the intoxication rule in his note, *The Voluntary Intoxication Defense in Iowa*, 73 Iowa L. Rev. 935, 947–52 & nn. 103–136 (1988), including the proposition that the legislature may have intended to modify it by enacting the statute. We do not consider this proposition because Guerrero Cordero did not challenge the substantive law governing the intoxication defense.

[4]The Code editor has modified the grammar of the statute to replace "his or her" with "the person's" guilt, but this was not a statutory amendment from the legislature.

not excuse nor aggravate his guilt. Even if a person is under the influence of an intoxicant or drug, he is responsible for his acts if he had sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent before he fell under the influence of the intoxicant or drug and then committed the act. Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming the specific intent.

*See* Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 200.14 (2012).

Courts are required to instruct the jury on the law for all material issues raised by the evidence in a case. Iowa R. Civ. P. 1.924; *Marin*, 788 N.W.2d at 837. It ordinarily "must instruct on a defendant's theory of defense provided the defendant makes a timely request, the requested theory of defense instruction is supported by the evidence, and the requested instruction is a correct statement of the law." *State v. Ross*, 573 N.W.2d 906, 913 (Iowa 1998). An instruction is supported by the evidence when it "could convince a rational finder of fact that the defendant has established his affirmative defense." *State v. Broughton*, 425 N.W.2d 48, 52 (Iowa 1988).[5] The defendant must produce substantial evidence to support the instruction. *Id.*

In this case, the only requirement at issue is whether the proposed instruction was supported by substantial evidence. There is no challenge to the timeliness of the request or the accuracy of the law. "[W]hen a defendant urges a defense of voluntary intoxication which is supported by substantial evidence, such evidence is to be considered by the jury on the material issue in the State's case upon which it bears

---

[5]The burden of proof is still on the State to prove the requisite intent. *State v. Templeton*, 258 N.W.2d 380, 383 (Iowa 1977) ("[T]he burden of proving specific intent does not leave the State even when the defendant relies on an intoxication defense."). However, a question of fact concerning the defendant's intoxication needs to arise from the evidence presented. *Id.* ("The defendant retains the obligation to raise a fact question for the jury on the intoxication issue regardless of the source of the evidence . . . .").

. . . ." *State v. Templeton*, 258 N.W.2d 380, 383 (Iowa 1977). Essentially, the issue requires us to determine if the district court abused its discretion in refusing to give the intoxication instruction because the level of intoxication shown by the evidence was sufficient to make the intoxication instruction necessary for the jury to properly assess the specific-intent elements of the crimes.

Our prior cases have found fact questions to support the intoxication defense based on expert testimony; lay witness testimony; circumstances before, during, and after the crime; and the defendant's own testimony. *Broughton*, 425 N.W.2d at 52 (using testimony from defendant and two other witnesses of intoxication to raise a question against police testimony of sobriety); *State v. Klinger*, 185 N.W.2d 759, 760–61 (Iowa 1971) (finding exclusion of doctor testimony on hypothetical effects of amount of liquor on a specific size of person constituted reversible error). These circumstances are not exhaustive, but capture the general sources of supporting evidence. *See State v. Babers*, 514 N.W.2d 79, 83 (Iowa 1994) (indicating supporting evidence can come from any source).

Intoxication has many degrees, and the law does not strive to capture the precise degree of intoxication to sustain the defense of intoxication other than enough evidence to support a finding that the defendant was so intoxicated as to be incapable of formulating or possessing the specific intent to commit the crime. *See Wilson*, 234 Iowa at 75–76, 11 N.W.2d at 745–46. Yet, the defense is not sustained by mere evidence of intoxication. *State v. Linzmeyer*, 248 Iowa 31, 34, 79 N.W.2d 206, 207–08 (1956) ("[S]imply being intoxicated is not sufficient.").

In *State v. Watts*, 244 N.W.2d 586, 589–90 (Iowa 1976), we confronted the quantum of evidence necessary to establish a fact question to support an instruction on the defense of intoxication. We found the district court committed reversible error in the case by failing to instruct on the role of intoxication in determining specific intent when the record at trial included evidence that the defendant, who had a history of chronic alcoholism and blackouts, drank eighteen half-quart cans of beer on the day of the crime and experienced memory lapses. *Id.* Even though the arresting police officers opined he was not intoxicated, a fact question was presented. *Id.* at 589.

A jury question would normally be presented on whether the intoxication of a person was of such a degree so as to negate the formation of specific intent. 21 Am. Jur. 2d *Criminal Law* § 149, at 258 (2008) (noting the determination whether extent of intoxication negated intent is for the fact finder). However, a threshold standard to submit the instruction does exist and must be met, which at least requires more than mere evidence of intoxication in the record. *See* 40A Am. Jur. 2d *Homicide* § 515, at 363 (2008) (indicating the intoxication instruction is required to be given only with substantial evidence to support a conclusion defendant was incapable of forming intent). In this case, there was evidence that Guerrero Cordero consumed beer on the day of the crime, but nearly all the witnesses testified he was not intoxicated. Only one witness testified he was probably intoxicated, but this tenuous and conclusory observation was not accompanied by additional evidence or descriptions of conduct to indicate the degree of intoxication. There is also no evidence in the record from any witness of any conduct or behavior engaged in by Guerrero Cordero on the day of the crime to support a finding of a high degree of intoxication. The instruction is not

required until the evidence would permit the fact finder to conclude the intoxication caused the defendant to lack the mental ability to act with the required specific purpose. Unlike the evidence in *Watts,* the evidence in this case only supported, at best, a finding of mere intoxication. *Cf. Watts*, 244 N.W.2d at 589–90. Under our standard, more evidence of intoxication is required.

In light of the evidence presented at trial, the jury could have only speculated that any intoxication by Guerrero Cordero caused a mental disability that made him incapable of forming specific intent. Consequently, the district court did not abuse its discretion in failing to instruct the jury on how to apply the evidence of intoxication in deciding if the State established the specific-intent elements of the crimes.

**IV. Conclusion.**

We conclude the district court did not err in refusing to give the intoxication instruction. We affirm the opinion of the court of appeals in part and vacate it in part. We vacate that portion of the opinion that concludes the district court erred in failing to submit the intoxication instruction to the jury. We affirm the convictions and sentences of the district court.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AND SENTENCE AFFIRMED.**