# IN THE COURT OF APPEALS OF IOWA

No. 14-1497
Filed December 9, 2015

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**DAVID SANCHEZ,**
       Defendant-Appellant.
_____

       Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


       David Sanchez appeals his convictions of robbery in the first degree,

intimidation with a dangerous weapon, and attempted burglary in the first degree.

**AFFIRMED.**


       Mark C. Smith, State Appellate Defender, and Maria L. Ruhtenberg,

Assistant Appellate Defender, for appellant.

       Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant

Attorney General, for appellee.


       Considered by Potterfield, P.J., Doyle, J., and Miller, S.J.*

       *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**POTTERFIELD, Presiding Judge.**

David Sanchez appeals his convictions of robbery in the first degree, intimidation with a dangerous weapon, and attempted burglary in the first degree. He contends there is insufficient evidence to support these convictions because he introduced evidence at his trial both that he was intoxicated and that he had diminished responsibility, and therefore lacked the capacity to form the requisite specific intent component for each of the three crimes. Alternatively, Sanchez argues his counsel was ineffective for having failed to object at trial to evidence presented of crimes that he committed other than those for which he faced criminal prosecution. We find the evidence in the record is sufficient to support his convictions and therefore affirm. We find the record is not adequate to decide his ineffective-assistance-of-counsel claim on direct appeal and preserve it for postconviction proceedings.

## I. Background Facts and Proceedings

On the morning of Friday, November 29, 2013, Sanchez awoke in the home of Renee Wright, a woman he had met the week prior while receiving inpatient mental health treatment at a Des Moines hospital. She offered him a place to stay after his release because he had nowhere else to go. That morning, Sanchez took a shower and then left the residence in Wright's car. The purpose of his departure was disputed at trial, but everyone agrees that Wright gave Sanchez permission to take the car with the understanding that he was to bring it right back. He did not.

When Sanchez left with Wright's car, he also left with her wedding rings and her .40 caliber handgun. Wright testified at trial that Sanchez stole the

items, but he denied having done so. He claimed Wright gave him the rings along with instructions to take the car to go pawn them and that she kept the handgun inside the car. In any event, Sanchez's first destination in Wright's car was a south Des Moines pawnshop, where he exchanged Wright's wedding rings for $75.00. Having completed that task, Sanchez spent the remainder of the afternoon engaging in a series of criminal acts with the handgun.[1]

After leaving the pawnshop, Sanchez attempted to burglarize a south Des Moines home but was thwarted when the sound of a breaking front window alerted the resident inside. Sanchez and the resident had a brief exchange, after which Sanchez walked away from the house and back to his car, warning the resident, "[d]on't come out here because I've got a gun." Sanchez then relocated to downtown Des Moines, where he fired a bullet through the front door of an occupied first floor unit in an apartment building. Next, Sanchez drove to Urbandale, where he robbed a man at gunpoint at a Quick Trip convenience store. He demanded that the man give him a case of beer he had purchased, telling the man "I've got a gun." When the man tried to walk past him without complying, Sanchez asked the man, "[w]hat, do you think I'm fucking around?" and showed his seriousness by firing a bullet into the ground to the man's side. Sanchez then pointed and waved the gun at the man's head and chest until he complied and handed over the beer. After leaving the Urbandale Quick Trip, Sanchez was involved in a hit-and-run accident. He later arrived at a Johnston office building, where he fired the handgun again after having a conversation with

---

[1] After the stop at the pawn shop, the precise timing and sequence of Sanchez's exploits that day is somewhat unclear. The sequence of events set forth herein appears to be the most probable, albeit incomplete, timeline based upon the evidence in the record.

an accountant about how to get on the interstate and get to Texas (Sanchez was from Houston and had only been in Iowa for approximately six months at the time).

Sanchez was finally arrested at an Urbandale Kum & Go convenience store, but not without further incident according to the testimony of more than one involved police officer. He resisted arrest to such a degree that officers had to use a taser and bean bag shells in order to subdue him. In reference to being arrested, Sanchez told an officer, "I'm only going to get a dime for this (presumably referring to a ten-year prison sentence). It doesn't mean anything anyway." In response to being asked if he understood his *Miranda* rights, Sanchez stated, "Yeah, I say kiss my ass, fuck you and fuck Iowa." He also told an officer to "[s]hut the fucking door" to the squad car he was placed in, and then laid across the back seat and attempted to kick the window out.

The State of Iowa charged Sanchez with six crimes: (1) robbery in the first degree, in violation of Iowa Code sections 711.1 and 711.2 (2013); (2) possession of a firearm by a felon, in violation of section 724.26; (3) intimidation with dangerous weapon, in violation of section 708.6; (4) attempted burglary in the first degree, in violation of sections 713.2 and 713.4; (5) a second count of intimidation with dangerous weapon, in violation of section 708.6; and (6) theft in the fourth degree, in violation of sections 714.1 and 714.2(4). Sanchez's case was heard by a jury in July 2014.

The jury at Sanchez's trial heard evidence of the events described above.[2] Against this factual backdrop, Sanchez presented additional evidence regarding his drug and alcohol use, and his mental health. The jury heard Sanchez's own testimony that he had consumed a large amount of alcohol and multiple Xanax pills on November 29, 2013, and this combination caused him to enter into a dreamlike state where he acted without being fully aware of what was happening. He also told the jury he was a "blackout drinker" and as a result only had very limited memories of the day in question. The jury also heard evidence that Sanchez was depressed and suicidal on Novemebr 29, 2013, and he may have been hoping his actions would cause him to be killed by police officers. Renee Wright corroborated his testimony to a degree in that she recalled seeing him drink a beer and take a Xanax before leaving with her car, but she also contradicted Sanchez in that she recalled him being in a good mood that morning. Most other witnesses testified they believed Sanchez had been intoxicated based upon some combination of their observations of his behavior, their impressions of his speech, and their recollection of an odor of alcohol on his breath.

Finally, Sanchez enlisted an expert—a licensed psychologist and clinical neuropsychologist—who told the jury about Sanchez's history of mental illness, which included depression, substance abuse, and multiple suicide attempts. The expert diagnosed Sanchez with major depressive disorder. He also told the jury

---

[2] In addition to these events, the jury also heard extremely brief testimony about Sanchez committing a robbery in a Des Moines alleyway. That testimony was cut off immediately by Sanchez's counsel and was avoided after a sidebar with the court. The court later admonished the jury to disregard the testimony because it was not related to any charged crime.

he believed Sanchez's alcohol and Xanax consumption caused a "substance abuse psychosis" on November 29, 2013. Sanchez's expert ultimately opined that because of this condition, Sanchez had diminished responsibility regarding his actions, and he did not act with specific intent to commit the alleged crimes because he simply would not have been able to do so.

The State rebutted the testimony of Sanchez's expert by enlisting an expert of its own—a medical doctor specializing in psychiatry—whose testimony directly contradicted that of Sanchez's expert. He conceded that Sanchez suffered from sort of depression but did not think Sanchez's history supported a diagnosis of major depressive disorder or any other form of depression that would interfere with his ability to form specific intent. The State's expert also told the jury that despite Sanchez's apparent intoxication, he would not necessarily have lacked the ability to form specific intent on November 29, 2013. In fact, the State's expert opined that Sanchez had been able to form specific intent based upon specific facts from the case. For example, the State's expert explained that specific intent for the first-degree robbery charge was implied by the fact that Sanchez utilized increasingly violent measures to accomplish his goal of committing a theft: first asking the robbery victim for his beer, then warning him verbally, and ultimately threatening him by firing the gun at the ground in order to scare the man. The State's expert also informed the jury that the psychosis Sanchez's expert had testified about was "inconceivable" and scientifically incorrect.

The jury returned guilty verdicts against Sanchez on four of the six counts presented: robbery in the first degree, intimidation with a dangerous weapon, attempted burglary in the first degree, and possession of a firearm by a felon.[3]

Sanchez now appeals the first three of those verdicts.

## II. Standard of Review

We review sufficiency-of-the-evidence claims for a correction of errors at law. *State v. Edouard*, 854 N.W.2d 421, 431 (Iowa 2014). In deciding whether the evidence is sufficient to support a guilty verdict, we consider "all of the record evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Showens*, 845 N.W.2d 436, 439–40 (Iowa 2014). If substantial evidence supports the verdict, we will uphold it. *Id.* at 440.

We may decide ineffective-assistance-of-counsel claims on direct appeal if we determine that the record is adequate. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We review claims of ineffective assistance of counsel de novo. *Id.* This is our standard because such claims have their basis in the Sixth Amendment to the United States Constitution. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

---

[3] The last of these counts—possession of a firearm by a felon—was actually presented to the jury as "carrying weapons" in order to avoid disclosing to the jury that Sanchez had previously been convicted of a felony. Sanchez stipulated to the fact that he had been convicted of felony theft in Texas and further stipulated that a guilty verdict on the carrying weapons count presented to the jury would be a guilty verdict for his actual charge of possession of a firearm by a felon.

## III. Analysis

### A. Sufficiency of the Evidence

The parties agree that on November 29 2013, Sanchez went on a drunken crime spree. Or, more precisely, the parties agree that Sanchez drank alcohol, consumed Xanax, and engaged in activity that would normally constitute crimes including robbery in the first degree, intimidation with a dangerous weapon, and attempted burglary in the first degree. The question presented by Sanchez is whether or not he can be said to have committed those crimes at all in the eyes of the law, given his presented defenses of intoxication and diminished responsibility. He argues that he cannot, and that the jury in his criminal trial therefore returned erroneous guilty verdicts for which the evidence did not provide sufficient support.[4] We disagree.

Robbery in the first degree, intimidation with a dangerous weapon, and attempted burglary in the first degree are all specific intent crimes. *See* Iowa Code §§ 711.1, 711.2, 708.6, 713.2, 713.4. Robbery in the first degree requires specific intent to commit a theft. *Id.* § 711.1. Intimidation with a dangerous weapon requires specific intent to injure or promote fear or anger in another person. *Id.* § 708.6. Attempted burglary in the first degree requires specific intent to commit a felony, assault, or theft. *Id.* § 713.2.

---

[4] Sanchez's other sufficiency-of-the-evidence argument—that the State failed to prove that the victim of his armed robbery had actually felt fear of serious injury—is without merit. The jury was certainly given information sufficient for a rational trier of fact to infer fear. The victim testified that he had initially refused to comply with Sanchez's demands but changed his mind after Sanchez threatened him with a handgun, fired a bullet near his feet, and then pointed the gun at his face and chest.

The defense of intoxication is codified in Iowa Code section 701.5. The defense applies only to specific-intent crimes and, if proven, acts to negate the specific-intent element of a crime. *See State v. Guerrero Cordero*, 861 N.W.2d 253, 259 (Iowa 2015). Traditionally, a high level of intoxication has been required to support a negation of specific intent; partial drunkenness does not render a criminal defendant incapable of forming specific intent. *Id.* The doctrine of diminished responsibility is recognized in this state as a matter of common law. *See Anfinson v. State*, 758 N.W.2d 496, 502 (Iowa 2008). "The diminished responsibility defense allows a defendant to negate the specific intent element of a crime by demonstrating due to some mental defect she did not have the capacity to form that specific intent." *Id.*

Based upon the evidence presented at trial, a reasonable jury could find that Sanchez was able to form the requisite specific intent for the crimes he now contests. It is certainly true that Sanchez presented to the jury defenses of both intoxication and diminished responsibility, either of which, if accepted, would have served to negate the specific intent element of the crimes. Indeed, those defenses constituted the entirety of his defense strategy, concisely summarized by Sanchez's attorney at the outset of her opening statement:

> May it please the Court, [the State], ladies and gentlemen of the jury.
> You'll see that this is, once you hear all the evidence, that this is a fairly straightforward, simple case. I will tell you right at the very beginning there's going to be no issue that Mr. Sanchez was involved in the incidents on November 29th of last year here in Polk County.
> Further, there's no issue regarding [identity]. What is going to be in dispute is his intent, which I know I spent a lot of time in jury selection talking about the intoxication and diminished responsibility defense due to mental health.

So what is going to be in dispute is due to his intoxication, is his intent to commit these crimes when they were committed on November the 29th, which the intoxication led to the diminished responsibility.

Sanchez's sole hope at trial was to convince the jury that, for one reason or another, he could not have had the state of mind necessary to be held criminally liable for his actions on November 29, 2013.

It seems beyond question that for at least some portion(s) of the day, Sanchez was under the influence of either alcohol, or Xanax, or both. But how intoxicated was he, and how did his intoxication affect his ability to act with specific intent? And how, if at all, did Sanchez's mental health issues factor into the equation, causing diminished responsibility on his part? On these points, the jury was faced with conflicting opinions from competing experts. Sanchez's expert testified he suffered from major depression disorder, while the State's expert testified such a diagnosis was unsupported. Sanchez's expert testified he was operating in a psychosis on November 29, 2013, due to his consumption of alcohol and Xanax, while the State's expert scoffed at the idea and called it a flat-out scientific falsehood. Sanchez's expert opined he could not have formed the requisite specific intent, while the State's expert opined he could, and in fact, did, do so.

Faced with these diametrically opposed expert opinions, the jury was free to believe whomever they wished. As the triers of fact, "[t]he jury is free to believe or disbelieve any testimony as it chooses and should give weight to the evidence as in its judgment such evidence should receive." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). This holds true for expert and non-expert

witnesses alike, and the jury may accept or reject an expert's testimony. *See Crow v. Simpson*, ___ N.W.2d ___, ___, 2015 WL 6598732, at *7 (Iowa 2015). Given the testimony of the State's expert, when combined with the other evidence available to the jury—eyewitness testimony, video of Sanchez's attempted break-in at the south Des Moines home, Sanchez's own testimony about his actions, etc.—there was substantial evidence that Sanchez had been capable of forming specific intent on November 29, 2013. There was also necessarily substantial evidence that he committed the crimes included in the jury's guilty verdict because Sanchez did not dispute having committed the underlying acts.

### B. Ineffective Assistance of Counsel

Sanchez also claims ineffective assistance of counsel related to his counsel's failure to object to evidence of two of the November 29, 2013 incidents that witnesses described to the jury, which were not the basis for any criminal charges. He argues the jury should not have heard evidence regarding either the hit-and-run accident he was involved in or his trip to the Johnston office building where he fired his gun for the third time because those incidents are other crimes independent from those for which he was charged. Evidence of those other crimes, he reasons, was inadmissible under Iowa Rule of Evidence 5.404(b) because it only served to prove his character and to improperly influence the jury so it would convict him based upon the combined weight of the crimes charged and those other misdeeds that were not.

When a claim of ineffective assistance of counsel is raised on direct appeal, an appellate court may either "decide the record is adequate to decide

the claim or may choose to preserve the claim for [postconviction proceedings]." Iowa Code § 814.7(3). In order to prevail on his claim of ineffective assistance of counsel, Sanchez must establish both that "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Straw*, 709 N.W.2d at 133 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). Both elements must be proved by a preponderance of the evidence. *Id.* With respect to the first prong, "we begin with the presumption that the attorney performed competently," and "avoid second-guessing and hindsight." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). Attorney action (or inaction) caused by improvident trial strategy, miscalculated tactics, or mistakes in judgment does not necessarily amount to ineffective assistance of counsel. *See State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006). Furthermore, because tactical decisions by counsel must be judged within the context of the totality of the circumstances on a case-by-case basis, it is often necessary to preserve such allegations for postconviction proceedings so that the record can be more fully developed. *Id.*

The record before us is not sufficient to address Sanchez's claim of ineffective assistance of counsel. We preserve it for futher postconviction proceedings so that Sanchez's attorney may explain her failure to object to evidence regarding the other crimes. It may have been a strategic choice related to Sanchez's overall trial strategy of intoxication and diminished responsibility defenses, or it may not. Either way, she should be allowed a forum in which to explain herself and defend her reputation.

**AFFIRMED.**