# IN THE COURT OF APPEALS OF IOWA

No. 17-1425
Filed September 12, 2018

**MARIO GUERRERO CORDERO,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

An offender found guilty of first-degree murder and attempted murder appeals the denial of his application for postconviction relief. **AFFIRMED**.

Charles J. Kenville of Kenville Law Firm, PC, Fort Dodge, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

A jury found Mario Guerrero Cordero guilty of murder in the first degree and attempted murder after hearing from witnesses who saw him shoot two people at an automobile repair shop. The supreme court affirmed his convictions on direct appeal, rejecting Guerrero Cordero's contention he was entitled to a jury instruction on an intoxication defense.[1] In applying for postconviction relief (PCR), Guerrero Cordero again focused on his consumption of alcohol on the day of the shootings, alleging his trial attorneys did not effectively represent him because they did not investigate calling an expert witness to support an intoxication defense. The district court concluded trial counsel was diligent in their pursuit of that defense, but were "hamstrung" by Guerrero Cordero's version of events. We agree, and affirm the dismissal of his application.

## I. Facts and Prior Proceedings

Several weeks of tension came to a tragic end on Independence Day 2008. That afternoon, Guerrero Cordero entered a repair shop run by his cousin, Miguel Cano Basurto,[2] pulled a handgun from his waistband, and fired multiple shots— killing Miguel. Guerrero Cordero then fired at other men as they fled the scene, wounding Hector Casillas in the foot and back.

The conflict started in May 2008, when Guerrero Cordero damaged a truck belonging to a customer of Miguel's repair shop. Guerrero Cordero neglected to pay for the repair. A few months later, on the morning of July 4, Miguel went to

---

[1] *See generally State v. Guerrero Cordero*, 861 N.W.2d 253 (Iowa 2015), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016).

[2] Because another individual shares the surname Basurto, we will use first names for clarity's sake.

El Tarasco's, the repair shop where he worked, hoping to complete some repairs before celebrating the holiday with friends and family. His plans were thwarted when friends began to arrive. When Guerrero Cordero showed up to join the celebration, Miguel asked him to leave. Miguel insulted Guerrero Cordero's family and challenged him to a fight. Guerrero Cordero dismissed Miguel's invitation, and left the shop without incident.

After leaving El Tarasco's, Guerrero Cordero stopped by a different repair shop owned by another relative, Rogelio Carlos Basurto, to join a gathering of friends. While there, Guerrero Cordero displayed his handgun to those present before returning it to his waistband. Guerrero Cordero and Rogelio then left to buy beer. During their errand, Guerrero Cordero told Rogelio he was tempted to shoot Miguel after being insulted, but refrained because Miguel was family. Rogelio warned him the gun "was only going to bring him trouble." Guerrero Cordero nevertheless loaded the gun and tucked it into his waistband. The two returned to Rogelio's repair shop where they socialized and drank beer, though Rogelio testified Guerrero Cordero was not "drunk."

Later that afternoon, Guerrero Cordero returned to El Tarasco's. Miguel's celebration was still under way. Guerrero Cordero entered the building, asked "what's up?", and fired several shots at Miguel. When Miguel fell to the floor, Guerrero Cordero turned to shoot at those fleeing the shop. Guerrero Cordero shot Casillas in the heel, causing him to fall. As Casillas rose and continued to retreat, he felt another shot in his back. Guerrero Cordero fled the scene. Casillas was hospitalized and underwent surgery, but survived. Miguel died shortly after his transfer to the hospital trauma center.

Detectives executed a search warrant at Guerrero Cordero's home and found the pistol, ammunition, and a spare magazine. Testing revealed five of the seven recovered bullets—including the bullet recovered from Miguel's body—were fired by the recovered pistol. Law enforcement learned Guerrero Cordero absconded to Mexico under an assumed name. Authorities obtained an INTERPOL warrant, apprehended Guerrero Cordero, and extradited him to the United States in 2011.

The State charged Cordero with first-degree murder and attempt to commit murder. *See* Iowa Code §§ 707.1, 707.2, 707.11 (2007). A jury found Guerrero Cordero guilty on both counts. The district court sentenced Guerrero Cordero to life imprisonment without the possibility of parole and twenty-five years for his respective convictions, to be served consecutively.

In Guerrero Cordero's direct appeal, our court affirmed his convictions, finding although Guerrero Cordero was entitled to a jury instruction on intoxication, he failed to demonstrate his defense was hampered by its absence. *State v. Cordero*, No. 12-2122, 2014 WL 3511736, at *1 (Iowa Ct. App. July 16, 2014), *aff'd in part, vacated in part*, 861 N.W.2d 253 (Iowa 2015). On further review, the supreme court affirmed the convictions, but determined the trial court did not abuse its discretion by declining to give an intoxication instruction. *Guerrero Cordero*, 861 N.W.2d at 255. Procedendo issued in April 2015.

In November 2015, Guerrero Cordero sought PCR, claiming several deficiencies in the performance of trial counsel. His application alleged counsel was ineffective for: (1) failing to investigate evidence to support his intoxication defense; (2) failing to consult with a toxicology expert to provide expert testimony

in support of the intoxication defense; and (3) failing to object to a specified jury instruction. The PCR court heard testimony from Guerrero Cordero and considered depositions from his trial counsel—Jennifer Larson and Kimberly Smith. The court determined attorneys Larson and Smith performed competently. Accordingly, the court dismissed Guerrero Cordero's PCR application. Guerrero Cordero appeals, asserting the district court erred in finding trial counsel was not ineffective in failing to retain an expert witness in toxicology.

## II. Scope and Standards of Review/Applicant's Burden

Generally, we review the denial of PCR for errors at law. *Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010). But because Guerrero Cordero's ineffective-assistance claim arises from the Sixth Amendment of the U.S. Constitution and article I, section 9 of the Iowa Constitution, we review it de novo. *See id.*

To prevail in his claim of ineffective assistance, Guerrero Cordero must prove by a preponderance of the evidence counsel failed to perform an essential duty and the failure resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is presumed competent, and is evaluated according to an objective standard of reasonableness. *See id.* at 688–89 (citation omitted). Counsel's strategic choices made after thorough investigation are virtually impenetrable. *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001). To satisfy the prejudice prong, Guerrero Cordero must demonstrate absent counsel's errors, there is a reasonable probability the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Failure to establish either prong is fatal to a claim of ineffective assistance. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

### III. Analysis

On appeal from the PCR denial, Guerrero Cordero contends the "only reasonable course of action" for his trial attorneys would have been to "at least investigate the possibility of an expert witness" for an intoxication defense. After our de novo review of the record, we disagree trial counsel's representation fell below an objective standard of reasonable competency.

Attorneys Larson and Smith recognized, given the numerous eyewitnesses to their client's crimes, their only hope was to show Guerrero Cordero could not form a specific intent to kill due to his heavy drinking. Attorney Smith testified Guerrero Cordero's case was "very difficult" and "the only potential defense that we identified was intoxication." But counsel could not find any witnesses who could "state definitively or consistently" that Guerrero Cordero was intoxicated at the time of the shooting. As Guerrero Cordero noted in his PCR testimony: "[N]obody wanted to testify to say that I was drunk."

So their only ability to present substantial evidence of an intoxication defense would have been to call Guerrero Cordero himself to the stand—a strategy the defense team did not see as a "great idea." Specifically, trial counsel did not want the jury to see their client was "very remorseless about what happened." According to Smith, "He said that he would take the stand and testify that his cousin had insulted him and that's why he shot him. And that also he remembered every step leading up to the confrontation that led to the shooting." Smith also testified they considered hiring an expert, but declined to do so because "the only way to get an expert witness in would have been to have Mr. Guerrero [Cordero] testify at the trial to lay the foundation for a toxicologist's expert opinions." Attorney Larson

testified: "We didn't have the facts to hand to an expert to try and extrapolate a level of intoxication."

Counsel engaged in thorough exchanges with their client. Guerrero Cordero acknowledged his attorneys talked to him about an intoxication defense. The attorneys explored the possibility of calling a toxicology expert to bolster an intoxication defense. And they appropriately weighed the risks and rewards of putting Guerrero Cordero on the stand to testify to his consumption of alcohol and drugs as foundational evidence, while he faced likely cross examination concerning his motive for the shooting, which would have helped the State establish the element of malice aforethought. Informed by their conversations, counsel advised Guerrero Cordero of the potential benefits and consequences of taking the stand, and Guerrero Cordero chose not to exercise his right to testify.

Nobody other than Guerrero Cordero could testify to the specifics of the effects of his alcohol consumption—and even his accounts were inconsistent. And he decided, on advice of counsel, it was not in his best interest to testify. Trial counsel determined they could not offer a sufficient foundation upon which an expert could base an opinion. Further, counsel believed lay witness testimony regarding any physical manifestations of intoxication could be as, if not more persuasive to jurors.

The measure for reasonable investigation by defense counsel depends on the "particular underlying circumstances." *Ledezma*, 626 N.W.2d at 145. Here, attorneys Larson and Smith fulfilled their duty to investigate a possible intoxication defense when they examined the available witnesses to assess whether they could provide a toxicologist with the raw materials to reach an opinion that would assist

the jury in deciding their client was incapable of forming the specific intent to kill because of his level of intoxication.

Without facts to undergird an expert's testimony, the trial attorneys were reasonable in curtailing their investigation. Attorneys Larson and Smith were left to hope enough evidence of intoxication would materialize through their cross examination of the State's witnesses to open the door to an intoxication instruction. While they were not ultimately successful in that strategy, we don't expect defense counsel to work miracles. Appellate courts must not "assume the role of Monday morning quarterback in condemning counsel's judgment in choosing between what are frequently equally hazardous options." *Anfinson v. State,* 758 N.W.2d 496, 501 (Iowa 2008) (quoting *State v. Newman*, 326 N.W.2d 788, 795 (Iowa 1982)); *see also* Greta Van Susteren, *Responsibility of a Criminal Defense Attorney,* 30 Loy. L.A. L. Rev. 125, 126 (1996) ("The convicted prisoners' standard for effective assistance of counsel is usually equal to a miracle worker—in other words, a standard that cannot be met by mere mortals. . . . Clients have been known to demand that their lawyers make a silk purse out of a sow's ear.").

Guerrero Cordero did not allege in his PCR testimony the existence of any additional witnesses whom counsel failed to locate. Nor did he assert he received poor advice concerning his decision not to testify—in fact, Guerrero Cordero insisted he couldn't remember discussing with counsel whether he should take the stand in his own defense. On this record, Guerrero Cordero is unable to show counsel failed to perform an essential duty. *See Ledezma*, 626 N.W.2d at 142. Accordingly, we affirm the denial of his PCR application.

**AFFIRMED.**