# IN THE COURT OF APPEALS OF IOWA

No. 23-0743
Filed October 30, 2024

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**ANGRES KAU,**
       Defendant-Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Margaret Reyes, Judge.

A defendant appeals his conviction for attempted murder. **AFFIRMED.**

Martha Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney General, for appellee.

Considered by Greer, P.J., Badding, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**DANILSON, Senior Judge.**

A jury convicted Angres Kau of attempted murder, willful injury causing bodily injury, domestic abuse assault while using or displaying a dangerous weapon, and three counts of child endangerment. Kau appeals and challenges only his conviction for attempted murder. We affirm.

### I.     Background Facts

Kau married his wife, Aleen, in Guam in 2014. They have three children. The couple eventually moved to Council Bluffs—Kau in December 2020 and Aleen in August 2021. Kau became concerned that Aleen would cheat on him. On October 15, 2022, Kau was drunk and struck Aleen in the face, only stopping when their five-year old son intervened. Kau then threatened Aleen saying, "If I ever catch you cheat[ing] on me, I will take your life."

On November 30, Aleen's first day at her new job where Kau also worked, Kau found her sitting next to a male coworker while on break. Kau told her he did not like that she sat next to the coworker. That evening, Kau questioned Aleen about her interactions with her coworker and what was going on between them.

The next morning, Kau took their daughter to school and showed up at the couple's home a few hours later. Around noon, Kau left with the couple's two sons. When Kau still had not returned around 3:00 p.m., Aleen got ready and left for work.

While on the way to work, Aleen saw Kau and their children sitting in a parked car. Kau waived for her to pull over. Aleen parked and made her way over to the car with Kau and their children. That is when she saw Kau take a drink from a liquor bottle. Aleen went to the other side of the car and got the two oldest

children out of the car. One of the children told her that Kau was drunk. As Aleen took their youngest child out of his car seat, she felt something wet on her back. She felt her back with her hand and when she looked at her hand, it was covered in her own blood. Kau had stabbed her in the back with a knife from their kitchen. Aleen turned and asked him why he would stab her. Kau didn't respond. Aleen started to cry, and Kau directed her to get into the car. Aleen refused to get into the car, but their children got in the car. Kau drove off with the children when a neighbor complained about the noise they were making. The neighbor refused to help Aleen, so Aleen walked back to their apartment to seek help from her mother and then they went to another neighbor to ask for help.

About that time, Kau and their children returned home. The children ran to Aleen while Kau went into their apartment. Kau came back out of their apartment with a liquor bottle and came at Aleen, he pulled a knife from his pocket and raised it above his head. Their neighbor urged Kau to stop and not hurt his family. Kau told the neighbor that he wanted to go to jail because he had stabbed his wife. Aleen, her mother, the children, and the neighbor made their way into the neighbor's home. Kau forced his way into the neighbor's home. He told their children that he loved them and to take care of each other. Kau then wanted Aleen to go back to their apartment with him. She refused, and Kau eventually left.

These events resulted in Kau's convictions for attempted murder, willful injury causing bodily injury, domestic abuse assault while using or displaying a dangerous weapon, and three counts of child endangerment. Kau now appeals, challenging whether the State provided sufficient evidence to establish the intent element for the attempted murder charge.

## II. Standard of Review

We review challenges to the sufficiency of the evidence for correction of errors at law. *See State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). "Under this standard, the court is highly deferential to the jury's verdict. We will affirm the jury's verdict when the verdict is supported by substantial evidence." *Id.* Evidence is substantial if it is sufficient to convince a rational person of the defendant's guilt beyond a reasonable doubt. *Id.* In making this determination, we view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the State. *Id.* The question is whether the evidence supports the finding the jury made, not whether it would support a different finding. *Id.*

## III. Discussion

Kau claims that the State failed to establish he acted with the specific intent to kill Aleen. He argues that he "was clearly extremely drunk and unable to form the intent necessary for a conviction of attempted murder." In order to convict Kau of attempted murder, the marshaling instruction required the jury to find:[1]

> 1. On or about the 1st day of December 2022, the defendant assaulted Aleen Kau.
> 2. By his acts, the defendant expected to set in motion a force or chain of events, which could have caused or resulted in the death of Aleen Kau.
> 3. When the defendant acted, he specifically intended to cause the death of Aleen Kau.

---

[1] As Kau did not object to the quoted jury instructions, they become the law of the case for purposes of reviewing the sufficiency of the evidence. *See State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020) ("Jury instructions, when not objected to, become the law of the case for purposes of appellate review for sufficiency-of-evidence claims.").

A definitional instruction explained,

> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.
>
> Because determining the defendant's specific intent requires you to decide what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

Another instruction informed the jury,

> The defendant claims he was under the influence of alcohol at the time of the alleged crime. The fact that a person is under the influence of alcohol does not excuse or aggravate his guilt.
>
> Even if a person is under the influence of alcohol, he is responsible for his act if he had sufficient mental capacity to form the specific intent necessary to the crime charged or had the specific intent before he fell under the influence of the alcohol and then committed the act. Intoxication is a defense only when it causes a mental disability which makes the person incapable of forming specific intent.
>
> The defendant does not have to prove intoxication; rather, the burden is on the State to prove the defendant was able to, and did, form the specific intent required.

Intoxication serves as a defense to specific-intent offenses, such as attempted murder. *See State v. Gurerro Cordero*, 861 N.W.2d 253, 259 (Iowa 2015), *overruled on other grounds by Alcala v. Marriott Intern., Inc.*, 880 N.W.2d 699, 707–08 (Iowa 2016). However, "[w]e have traditionally required a high level of intoxication to support a finding of no specific intent." *Id.* So intoxication in itself does not preclude an individual from forming specific intent. *Id.* "[T]he 'intoxication' or 'drunkenness' must be to the extent that the designing or framing of such [criminal] purpose is impossible." *Id.* (quoting *State v. Patton*, 221 N.W. 952, 952 (Iowa 1928)). One must be "so intoxicated that he or she could no longer reason and [be] incapable of forming a felonious intent." *Id.*

We conclude a reasonable jury could find that Kau had the ability to form the specific intent to kill Aleen when he stabbed her and did have that specific intent. The evidence established that about a month and a half prior to the stabbing, Kau had threatened to kill Aleen should she cheat on him. He exhibited jealous behavior the day prior, when he was upset that she sat next to a coworker while on break. Kau waited along the road Aleen would take to work and got her to pull over and approach the car. Kau got out of the car and silently snuck up on Aleen while she was distracted trying to remove their youngest child from the car seat. Then he stabbed Aleen with a knife from their kitchen—and the jury could properly infer that when he left their apartment earlier that day he took the knife with him as part of a plan to stab Aleen. Kau fled the area when the neighbor came out to complain about the noise. Kau was then able to return to their apartment complex with their children. After finding Aleen at the neighbor's home, he told the children he loved them and to take care of each other—seemingly telling them goodbye—before trying to get Aleen to leave with him.

While Kau may have been under the influence of alcohol that day, his movements and statements make clear that his actions were goal oriented; they reveal that he was able to plan, act, and respond in the moment. In other words, the State provided substantial evidence that Kau was capable of acting with specific intent. And the substantial evidence supports that Kau did act with the specific intent to kill Aleen given his recent threat to kill her, his jealousy the day before at work, his pre-planning to take the large kitchen knife with him when he

left the home, and from the act of sneaking up on her and stabbing her in the back with the knife.

**AFFIRMED.**