# IN THE COURT OF APPEALS OF IOWA

No. 14-1339
Filed December 9, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NATHAN ANTHONY WALTER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Todd A Geer,

Judge.


        The defendant appeals his conviction for willful injury causing serious

injury while in the immediate possession of a dangerous weapon.  **AFFIRMED.**


        Alfredo Parrish and Andrew Dunn of Parrish, Kruidenier, Dunn, Boles,

Gribble, Gentry, Brown & Bergmann, L.L.P., Des Moines, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik and Alexandra Link,

Assistant Attorneys General, for appellee.


        Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

On November 27, 2012, while drinking in a bar, Nathan Walter came up behind Craig Kriener and smashed a glass against the side of Kriener's head. Broken glass sliced Kriener's jugular vein and face. Walter immediately left the bar and left Kriener in a pool of blood. Kriener was rushed to the emergency room, underwent surgery, and spent three days in the intensive care unit. He suffered permanent scarring and nerve damage. The assault was captured on the bar's video surveillance system and was witnessed by numerous bar patrons. At trial, Walter asserted a defense of intoxication. The jury rejected the defense and found Walter guilty of willful injury causing serious injury and found Walter was in the immediate possession of a dangerous weapon. Walter filed a motion for new trial and motion in arrest of judgment, both of which the district court overruled. Walter stipulated to two prior felony convictions, and the district court entered judgment on the verdict and sentenced Walter as a habitual offender to an indeterminate term of incarceration not to exceed fifteen years. In this direct appeal, Walter raises numerous challenges to his conviction.

I.

Walter first challenges the sufficiency of the evidence supporting his conviction. We review challenges to the sufficiency of the evidence for correction of legal error. *See State v. Edouard*, 854 N.W.2d 421, 431 (Iowa 2014). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the

evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We will uphold a verdict if there is substantial evidence to support it. *See id.* "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* But "[e]vidence that raises only suspicion, speculation, or conjecture is *not* substantial evidence." *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997) (internal quotation marks omitted).

As relevant here, the State was required to prove Walter acted with the specific intent to cause serious injury. *See* Iowa Code § 708.4(1) (2011) ("Any person who does an act which is not justified and which is intended to cause serious injury to another commits willful injury, which is punishable as follows: 1. A class "C" felony, if the person causes serious injury to another."); *State v. Hickman,* 623 N.W.2d 847, 852 (Iowa 2001) (explaining the "willful-injury statute" required the State to prove "the defendant intended to cause serious injury to the victim (specific intent)"); *State v. Rowley*, No. 07-0168, 2008 WL 4725291, at *3 (Iowa Ct. App. Oct. 29, 2008) ("The crime of willful injury has as an element the specific intent to cause serious injury to another."). In Iowa, "specific intent" means to undertake an act with the intent to "to do some further act or achieve some additional consequence." *Eggman v. Scurr*, 311 N.W.2d 77, 79 (Iowa 1981).

Walter asserted a defense of intoxication. The code provides:

The fact that a person is under the influence of intoxicants or drugs neither excuses the person's act nor aggravates the person's guilt, but may be shown where it is relevant in proving the person's specific intent or recklessness at the time of the person's alleged

criminal act or in proving any element of the public offense with which the person is charged.

Iowa Code § 701.5. The defense of intoxication is a limited one. "[B]efore intoxication [can] prevent a finding of specific intent, the offender not only had to be intoxicated, but so intoxicated that he or she could no longer reason and was incapable of forming a felonious intent." *State v. Guerrero Cordero*, 861 N.W.2d 253, 259 (Iowa 2015). This is a fairly high threshold: "Mental disability, arising from the use of intoxicants, is a matter of degree. Partial drunkenness does not make impossible the formation of said criminal object. Therefore, the 'intoxication' or 'drunkenness' must be to the extent that the designing or framing of such purpose is impossible." *Id.*

Walter contends his voluntary intoxication precluded him from forming the specific intent to cause Kriener serious injury. The evidence shows on November 27, 2012, Walter and a friend began drinking beer around 3:00 p.m. at Walter's house. Walter's friend testified he and Walter either shared a twelve pack of beer or drank a twelve pack of beer each. Regardless, according to Walter's friend, they finished drinking at approximately 6:00 p.m. Walter's friend went home, and Walter drove himself to a local bar to meet friends. After arriving at the bar, Walter continued to drink with his friends, including Kurt Walker. Later that evening Walker and Kriener got into a verbal dispute while playing pool. While Walker and Kriener were standing face-to-face and speaking with each other, Walter walked across the bar and smashed a bar glass against Kriener's head. Walker and Walter immediately left the bar. Walker called his mother, a

registered nurse, to see if she could treat injuries to Walter's hand. Ms. Walker met with Walker and Walter and drove Walter to the hospital.

Several witnesses testified regarding Walter's level of intoxication. Walter's friend testified to the quantity of beer Walter drank in the afternoon prior to leaving for the bar. Jacob McCraney testified Walter was excessively drunk. Several of Walter's friends testified to the same. Walter's wife testified Walter took at least two of her Xanax pills earlier in the day prior to departing for the bar. There was also testimony Walter was drinking heavily, slurring his words, and had bloodshot eyes. Walter's expert witness, Dr. Newring, testified the combination of alcohol and Xanax rendered Walter sufficiently intoxicated to preclude him from forming the specific intent necessary to commit the offense. The State did not present any contrary expert evidence.

Despite the foregoing, when viewed in the light most favorable to the State, we have little trouble concluding there is substantial evidence Walter was capable of forming the specific intent to cause Kriener serious injury. The prosecutor effectively cross-examined the witnesses who testified Walter drank excessively prior to going to the bar and was excessively drunk at the bar. Through cross-examination, the prosecutor discredited Walter's wife's testimony that Walter took her Xanax pills on the day of the assault. The information regarding the Xanax was inconsistent with prior police or medical reports. Her testimony also was inconsistent with her prescription use and fulfillment dates. There was also testimony Walter was not overly intoxicated. The bartender testified she had worked as a bartender for several years and was experienced in

determining when patrons had too much to drink. She testified she served Walter several dinks and had no concern regarding his intoxication level. She testified he appeared awake and alert. Walter's friend, Amanda Hall, testified Walter did not need assistance in moving around and Walter was able to hold a conversation. The investigating officer who interviewed Walter at the hospital testified Walter "seemed a little bit intoxicated" but was awake, alert, and understood events. The jury also was able to view the assault on the surveillance video admitted into evidence. The surveillance video shows Walter was able to walk across the bar without any impairment and strike Kriener. After striking the victim, Walter left the bar without any apparent impairment.

Walter makes much of the fact the State did not call an expert witness to rebut Dr. Newring's testimony. The argument is unavailing. It was established during cross-examination the doctor did not meet with the defendant at the relevant time. It was also established the doctor did not have any toxicology reports from the relevant time. Dr. Newring admitted his conclusions were based on the predicate information provided by Walter's counsel that Walter had drank eighteen beers and taken a certain quantity of Xanax. The predicate information was greatly disputed, and the jury was free to conclude Walter was not so impaired. Even if the jury had believed Walter had drunk a significant quantity of alcohol mixed with Xanax, the jury was still within its province to reject Dr. Newring's opinion drawn from those facts. "The fact finder is not obliged to accept expert testimony, even if it is uncontradicted, although testimony should

not be arbitrarily and capriciously rejected." *State v. Brandes*, No. 06-0576, 2007 WL 4553478, at *4 (Iowa Ct. App. Dec. 28, 2007).

We also conclude there was substantial evidence Walter in fact had the specific intent to cause Kriener serious injury. Although there was some verbal sparring between Walker and Kriener, there was no immediate threat of violence from which it could be inferred Walter was merely reacting to a violent situation. Instead, Walter walked across the bar without any apparent impairment. He approached the victim from behind so the victim was unable to protect himself. There was testimony from which the jury could have found Walter picked up the glass off of a table while walking across the bar, from which it could be inferred he intended to use the glass as a weapon to inflict serious injury. The mere use of a dangerous weapon supports an inference Walter intended to cause death or serious injury. *See State v. Ambrose*, 861 N.W.2d 550, 560 (Iowa 2015) (explaining intent may be inferred "from the mere use of the instrument"); *State v. Smith*, 242 N.W.2d 320, 326 (Iowa 1976) (concluding "malice aforethought may be inferred from defendant's use of . . . a deadly weapon" in a second-degree-murder prosecution); *State v. Hephner*, 161 N.W.2d 714, 720 (Iowa 1968) (stating that use of a deadly weapon supports inference of intent to commit murder necessary for a conviction of assault with intent to commit murder). Walter smashed the drinking glass against Kriener's head with sufficient force to shatter the glass and cause Kriener permanent injury. The savagery of the blow and seriousness of the resulting injury support an inference of intent to cause serious injury. *See State v. Bell,* 223 N.W.2d 181, 184 (Iowa 1974) ("[T]he extent

of injury may be taken into consideration in determining defendant's intent.");
*State v. Alexander*, No. 12-0715, 2013 WL 535741, at *7 (Iowa Ct. App. Feb. 13, 2013) (holding blow to the head with cane done with sufficient force to crack the cane and lacerate the forehead supported inference of "intent to cause death or serious injury"). In short, the jury was free to infer the defendant intended the natural consequences of his acts. *See State v. Evans*, 671 N.W.2d 720, 724–25 (Iowa 2003) (noting a court may infer intent from the normal consequences of a party's actions); *State v. Rinehart*, 283 N.W.2d 319, 322–23 (Iowa 1979) (discussing the inference a person intends the natural consequences of voluntary acts).

"Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence and credit other evidence." *Sanford*, 814 N.W.2d at 615 (citation and internal quotation marks omitted). In particular, the question of whether the defendant was so intoxicated as to be unable to form the requisite intent is "entrusted to the jury based on the facts of each case." *Guerrero Cordero*, 861 N.W.2d at 259. It is immaterial the State's evidence was circumstantial. *See* Iowa R. App. P. 6.904(3)(p) ("Direct and circumstantial evidence are equally probative."). Intent is seldom proven by direct evidence. *See State v. Grant*, 722 N.W.2d 645, 647–48 (Iowa 2006) ("Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence."); *State v. Nance*, 533 N.W.2d 557, 562 (Iowa 1995) ("Intent is a state of mind; it may be established by circumstantial evidence and by inferences

drawn from that evidence."). Walter presented his defense to the jury, and the jury rejected his defense. We are disinclined to interfere with the jury's verdict. *See Brandes*, 2007 WL 4553478, at *4 (holding trial court was free to reject expert testimony the defendant lacked the capacity to form specific intent).

II.

A criminal defendant has a constitutional and statutory right to be personally present at all critical phases of the proceedings. *See* U.S. Const. amend. VI and XIV; Iowa R. Crim. P. 2.27(1); *State v. Rogerson*, 855 N.W.2d 495, 505 (Iowa 2014); *State v. Wise*, 472 N.W.2d 278, 279 (Iowa 1991). The right is grounded in both the Confrontation Clause and the Due Process Clause. *See Rogerson,* 855 N.W.2d at 505. Although the defendant has a right to be present for all critical stages of the proceedings, the right to be present may be waived. *See State v. Mensah*, 424 N.W.2d 453, 455 (Iowa 1988). If not waived, prejudice may be presumed from the defendant's absence. *See State v. Atwood*, 602 N.W.2d 775, 781 (Iowa 1999). This presumption may be rebutted, however, under a harmless-error analysis. *See id.* A defendant's absence thus will not always necessitate reversal. *See Wise*, 472 N.W.2d at 279. "To establish harmless error, the State must prove beyond a reasonable doubt the error complained of did not contribute to the verdict." *State v. Walls*, 761 N.W.2d 683, 686 (Iowa 2009).

Walter contends his right to be present at a critical stage of the proceeding was violated when the district court allowed the jury to re-watch the surveillance video in his absence but in the presence of the prosecutor and the judge. After

the case had been submitted to the jury, the jury requested permission to re-watch the surveillance video that had been admitted into evidence. The district court contacted the prosecutor and defense counsel prior to taking any action. Both parties agreed the jury could re-view the surveillance video in the defendant's absence. In the judge's presence, the prosecutor operated the audiovisual equipment to allow the jury to view the exhibit. This is the same procedure the parties used during the course of trial. The re-viewing of the surveillance video was reported in the defendant's absence. The record reflects the prosecutor operated the audiovisual equipment without any comment or remarks to the jury.

"Our error preservation rule requires that issues must be presented to and passed upon by the district court before they can be raised and decided on appeal." *State v. Manna*, 534 N.W.2d 642, 644 (Iowa 1995). After closing arguments, the parties made a record regarding the exhibits to be given to the jury to view during deliberation. Walter did not object to the jury having the surveillance video to view during deliberation. The district court contacted the parties upon receiving the jury's request to re-watch the surveillance video, and the parties consented to the procedure used. After the jury had viewed the exhibit but prior to the district court reading the verdict, the district court discussed with Walter and his counsel the procedure used to replay the video for the jury. Walter's trial counsel stated, "I have discussed it with Mr. Walter, and we don't have any objections to that." After the verdict was read in open court,

Walter made no objection to the procedure used. Walter did not raise this issue in either of his post-trial motions.

In a very similar case, the Washington Court of Appeals concluded the defendant effectively waived any challenge to the jury's re-listening to audiotapes outside of the defendant's presence when the audiotapes had been admitted into evidence and the defendant made no contemporaneous objection to the procedure:

> Bowers contends that the trial court violated his right to be present during critical stages of his trial when it played the tapes for the jury outside his presence and the presence of his counsel. He acknowledges that his counsel agreed to the playing of the tapes at the request of the jury without the presence of counsel, but argues that he did not waive his right to be present. . . . We also note that the record contains no indication that Bowers objected to the court's statement that it would allow the jury to listen to the tapes outside of his presence. The trial court therefore lacked the opportunity to address the issue of prejudice. Because Bowers does not meet the threshold requirement of establishing the possibility of prejudice, he cannot claim that the alleged error caused him harm.

*State v. Bowers*, No. 54168-4-I, 2005 WL 2420426, at *2 (Wash. Ct. App. Oct. 3, 2005). Similarly, because Walter did not object to the procedure used, we conclude he has effectively waived any challenge to the procedure used and otherwise failed to preserve error. *See State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) ("Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal."); *State v. Rasmus*, 90 N.W.2d 429, 430 (Iowa 1958) ("A party to a criminal proceeding . . . will not be permitted to allege an error in which he himself acquiesced, or which was committed or invited by him, or was the natural consequence of his own

actions."); *State v. Jensen*, 66 N.W.2d 480, 484 (Iowa 1954) ("It is sound law and logic that a party may not sit by and permit the court to commit inadvertent error without protest, and then complain for the first time in his motion for a new trial or in the appellate court.").

III.

Walter raises several claims of ineffective-assistance-of-counsel. Such a claim is an "exception to normal error-preservation rules." *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006). To establish a claim of ineffective assistance, Walter must demonstrate "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). To establish counsel failed to perform an essential duty, Walter must establish "the attorney performed below the standard demanded of a reasonably competent attorney." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). The attorney's performance is measured against "prevailing professional norms," and it is presumed the attorney performed competently. *See id.* "A claim of ineffective assistance is more likely to prevail when counsel lacked diligence as opposed to the exercise of judgment." *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003). To establish prejudice, the defendant must show trial counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that his conviction is unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires a showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Collins v. State*, 588 N.W.2d 399,

402 (Iowa 1998) (citation and internal quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the defendant's trial." *Id.* (citation and internal quotation marks omitted). "In determining whether this standard has been met, we must consider the totality of the evidence, what factual findings would have been affected by counsel's errors, and whether the effect was pervasive or isolated and trivial." *State v. Clay*, 824 N.W.2d 488, 496 (Iowa 2012). A claim for ineffective assistance of counsel is reviewed de novo. *See* Iowa R. App. P. 6.907; *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013).

### A.

Walter contends his trial counsel was ineffective for failing to object to the jury re-viewing the surveillance video outside Walter's presence and for failing to request an instruction the jury should not draw a negative inference from Walter's absence during the re-viewing. While "the better practice [would be] for counsel to always obtain the client's presence or for the court to obtain an express waiver of the defendant's presence," *Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010), Walter failed to establish counsel breached an essential duty by failing to object to the procedure used or by failing to request a curative instruction and failed to establish prejudice.

It is not disputed it was within the court's sound discretion to allow the jury to take to the jury room for further examination all papers and exhibits in evidence. *See* Iowa R. Crim. P. 2.19(5)(e) ("Upon retiring for deliberations the jury may take with it all papers and exhibits which have been received in

evidence. . . ."). The parties agreed to this prior to the time the jury asked to re-view the surveillance video. As a general rule, the defendant has no right to monitor the jury's deliberations while examining evidence. *See State v. Gathercole*, 553 N.W.2d 569, 575 (Iowa 1996) (holding the district court did not abuse its discretion in allowing the jury to use recorder to replay audio tape of interview during deliberations); *State v. Johnson*, No. 01-1644, 2003 WL 1966962, at *5 (Iowa Ct. App. Apr. 30, 2003) (holding trial counsel did not breach an essential duty by not objecting to jury's use of recorder to listen to audiotape during deliberations). There is thus no issue with the jury re-viewing a video already admitted into evidence.

The question is whether the defendant's presence was required when the jury re-viewed the surveillance video in the presence of the judge and the prosecutor, who was present solely for the purpose of operating the equipment, where neither the prosecutor nor the judge had any substantive communication with the jury. There is some authority indicating the defendant did not need to be present. *See, e.g., United States v. Sobamowo*, 892 F.2d 90, 96 (D.C. Cir. 1989) (holding there was no reversible error when defense counsel and judge, but not defendants, were present when an audio tape was replayed for the jury during deliberations); *Atwood v. Mapes*, 325 F. Supp. 2d 950, 975 (N.D. Iowa 2004) (stating the "presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only"); *Banks v. State*, 884 N.E.2d 362, 371 (Ind. Ct. App. 2008) (holding "appellate counsel could not have provided ineffective assistance of counsel by

failing to argue that Banks' rights had been violated when he was not permitted to be present when the jury reviewed the tape during deliberations"); *State v. Wembley*, 712 N.W.2d 783, 796 (Minn. Ct. App. 2006) (stating "defendant does not have a constitutional right to be present during jury deliberations when the jury reviewed exhibits submitted into evidence" and "the district court did not commit reversible error when it allowed the jury to replay the videotape exhibit outside of [the defendant's] presence"); *State v. Fehr*, 341 P.3d 363, 368 (Wash. Ct. App. 2015) ("We hold that where audio evidence was admitted at trial and played to the jury with the defendant present, a subsequent proceeding to determine whether to replay that audio evidence during jury deliberations is not a time during trial where the defendant's substantial rights may be affected.").

We need not resolve this question, however, because Walter has not articulated *Strickland* prejudice. In this context, the defendant must show that had he been present or had the jury been instructed not to draw a negative inference from his absence, there was a reasonable probability of a different outcome. *See Everett*, 789 N.W.2d at 159-60. Walter has not identified the prejudice allegedly suffered. Walter has not cited any authority for the proposition he suffered any prejudice. He simply asserts he was prejudiced. "[C]onclusory claims of prejudice are not sufficient to satisfy the prejudice element." *State v. Tate*, 710 N.W.2d 237, 241 (Iowa 2006). *See also* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

Independently, we conclude Walter has not established *Strickland* prejudice. "Even if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they actually had an adverse impact on the defense." *Tate*, 710 N.W.2d at 240. There is no such showing here. The district court acted within its discretion. *See* Iowa R. Crim P. 2.19(5)(e). The jury contacted the district court only because it needed assistance in viewing the surveillance video. The district court specifically explained to the jury: "Ladies and gentlemen, I need to inform you that we cannot communicate with you. You're deliberating now, and so you won't hear anything from Mr. Williams. Mr. Engels and his client are not here because Mr. Engels is unavailable . . . we won't be able to answer any questions you might have." The jury watched the surveillance video in the presence of the judge. Neither the judge nor the prosecutor made any substantive comment while the jury watched the video. The tape had been played for the jury multiple times during trial and discussed during closing argument. There is no reasonable probability the jury would have reached a different result had the defendant been present. *See Everett*, 789 N.W.2d at 160-61 (holding no prejudice when court instructed jury outside the defendant's presence); *Erving v. State*, No. 11-0582, 2013 WL 4039464, at *1-2 (Iowa Ct. App. Jul. 24, 2013) (holding the defendant did not establish *Strickland* prejudice where the defendant was not present during guilty-plea proceeding for misdemeanor offense); *see also Pilgrim v. Pineda*, No. 2:10-CV-761, 2011 WL 6967997, at *26 (S.D. Ohio Nov. 4, 2011) ("Even if the trial court's communication with the jury outside of defendant's presence were error,

defendant failed to demonstrate that he was prejudiced when not only did defense counsel agree with the trial court's response to the jury, but the court's communication was brief and nonsubstantive in nature."); *People v. Kinsey*, No. 322145, 2015 WL 6161744, at *2 (Mich. Ct. App. Oct. 20, 2015) (holding non-substantive communication with jury outside the presence of the defendant was not prejudicial); *State v. Johnson*, No. 03 CA 118, 2004 WL 1812731, at *1-2 (Ohio Ct. App. Aug. 11, 2004) (holding the defendant suffered no prejudice where the court had non-substantive communication with the jury outside the defendant's presence).

B.

Walter next contends his trial counsel was ineffective in failing to object to several instances of prosecutorial misconduct. We apply the following standard to assess a prosecutorial misconduct claim raised within an ineffective-assistance-of-counsel claim:

> In analyzing the defendant's ineffective-assistance-of-counsel claim, our first step is to assess whether the record demonstrates, as a matter of law, the existence or absence of a meritorious due process violation. Thus, we must consider whether the prosecutor was guilty of misconduct in the particulars identified by [defendant] and whether the record shows [defendant] was prejudiced, i.e., denied a fair trial.
> If the record is insufficient to make this determination, we must preserve the defendant's ineffective-assistance claim for a fuller development of the pertinent facts. If, however, the record shows that either element is lacking as a matter of law, we will affirm [defendant's] conviction without preserving his due process claim for a later postconviction-relief action.

*State v. Graves*, 668 N.W.2d 860, 869–70 (Iowa 2003). A party is entitled to a new trial based on prosecutorial misconduct only if the party has shown

prejudice. *See State v. Bowers*, 656 N.W.2d 349, 355 (Iowa 2002). Relevant factors include: "(1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct." *Graves*, 668 N.W.2d at 870 (internal citations omitted). "The most important factor under the test for prejudice is the strength of the State's case." *State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006). If the defendant establishes a meritorious due process claim, we must then consider that claim within the context of an ineffective-assistance of counsel claim by considering whether trial counsel's decision to forego objection or request new trial was a breach of an essential duty and whether *Strickland* prejudice resulted.

1.

Walter argues the prosecutor engaged in misconduct while cross-examining Walter's wife. The defendant complains the prosecutor used leading questions to paint the impression Walter's wife would say anything to exonerate her husband. Walter's complaint regarding the prosecutor's examination of Walter's wife is without merit. Leading questions are permitted on cross-examination. *See* Iowa R. Evid. 5.611(c) ("Ordinarily leading questions should be permitted on cross-examination."). The prosecutor's use of Walter's wife's prior inconsistent statements was also permissible. *See* Iowa R. Evid. 5.613. Walter has failed to establish a threshold showing of prosecutorial misconduct in support of his ineffective-assistance claim, and his claim fails. *See State v.*

*Schneider*, No. 14-1113, 2015 WL 2394127, at *4-6 (Iowa Ct. App. May 20, 2015) (holding the defendant's claim of ineffective assistance failed absent a threshold showing of misconduct).

2.

Walter also challenges the conduct of the prosecutor in examining Dr. Newring. Walter contends the prosecutor's questions regarding Dr. Newring's opinions in other, unrelated cases were irrelevant because the prosecutor failed to lay foundation from which the jury could infer Dr. Newring's opinions in the other cases were unreliable. Walter also contends the prosecutor engaged in misconduct by eliciting through cross-examination of Dr. Newring that Dr. Newring was a paid expert witness who had not testified for the State for several years. With respect to the first issue, even assuming the questions did not elicit relevant information due to lack of foundation, the questions do not rise to the level of prosecutorial misconduct. With respect to the latter issue, the fact that an expert is paid is proper grounds for impeachment. *See State v. Stewart,* 691 N.W.2d 747, 751-52 (Iowa Ct. App. 2004) (holding "straightforward, non-inflammatory" questioning of expert regarding past history and pattern of testifying for party in criminal trial was proper cross-examination); *Butman v. Christy*, 198 N.W. 314, 317 (Iowa 1924) ("It should require no citation of authorities to establish the proposition that it is always permissible to show, on cross-examination, the interest of the witness."). The claims are without merit. *See Schneider*, 2015 WL 2394127, at *2.

3.

Walter challenges several statements the prosecutor made during closing argument. A prosecutor is entitled to "some latitude" during closing arguments in analyzing the evidence admitted at trial. *See Graves,* 668 N.W.2d at 874. A prosecutor may argue the reasonable inferences and conclusions to be drawn from the evidence but may not suggest that the jury decide the case on any ground other than the weight of the evidence introduced at trial. *See id.* The prosecutor cannot assert a personal opinion, create evidence, or misstate the law. *See id.* at 874, 879-80. "The governing principle does not preclude all personalized remarks; it merely precludes those that do not appear to be based on the evidence." *State v. Williams*, 334 N.W.2d 742, 745 (Iowa 1983).

Walter contends the prosecutor engaged in misconduct when he used the phrase "red herring" in reference to Walter's argument that the police failed to test his blood alcohol concentration. Walter contends the term "red herring" is "undeniably pejorative." The cases on which Walter relies are distinguishable. In *United States v. Holmes*, 413 F.3d 770, 775 (8th Cir. 2005), the court held the defendant was denied a fair trial where the prosecutor made improper statements, including use of the phrase "red herring," to create the impression "defense counsel [was] conspiring with the defendant to fabricate testimony." The isolated statement here does not go that far. In *State v. Campos*, 309 P.3d 1160, 1175 (Utah Ct. App. 2013), the court held the prosecutor's comments were improper because the comments were directed at defense counsel. In contrast, in this case the prosecutor's statement was a comment on the defense's theory

and the evidence, which is permissible. *See Campos*, 309 P.3d at 1175 ("However, referring to defense counsel's theory as a red herring would not be inappropriate so long as the reference could be classified as a comment on the strength of the evidence and the inferences and deductions arising therefrom."). The defendant was not denied a fair trial by the prosecutor's singular use of the phrase "red herring." The claim fails. *See Schneider*, 2015 WL 2394127, at *6.

Walter contends the prosecutor crossed the line by reemphasizing during closing argument that Dr. Newring was a paid expert witness. This was not improper argument. *See State v. Comes*, 62 N.W.2d 753, 757 (Iowa 1954) ("It is of course the duty of a prosecuting officer to present the State's cause zealously and effectively within proper bounds."). However, misconduct occurs when the prosecutor seeks to attack a witness's credibility "through unnecessary and overinflammatory means that go outside the record or threaten to improperly incite the passions of the jury." *Carey*, 709 N.W.2d at 556. We are concerned by the prosecutor's arguably inflammatory statement regarding Dr. Newring's motivation to testify:

> The doctor, who's paid to be here, who has never testified in his current position for the prosecutor in any criminal matter, what's his motive here? And I would say it's a big dollar sign, folks. His explanation, his bias for the opinion that he gives is a big dollar sign.

The defendant cites numerous cases from other jurisdictions that give examples of the prosecutor going too far in criticizing a paid expert. We need not discuss or distinguish each case. The statement in this case, while at the edge of propriety, is not as inflammatory as in the cases cited. We do make the following

observation, however: The motivation of the witness is a proper ground for argument; inflammatory language is not a proper means to make the argument.

Walter also challenges the same statement on the ground that the prosecutor gave his personal opinion on the evidence. It is improper for the prosecutor to give his personal opinion regarding the evidence. *See Williams*, 334 N.W.2d at 744 ("Of course, counsel has no right to create evidence by his argument nor interject his personal beliefs. It is for the jury to determine the logic and weight of the conclusions drawn."). We reject Walter's argument that counsel's statement was a statement of personal belief. Under similar facts, our court has concluded the prosecutor did not interject his personal beliefs into closing argument by using the pronoun "I" during argument when the context showed the prosecutor was referring to evidence admitted. *See State v. Lindsey*, No. 10-1812, 2011 WL 6076544, at *4 (Iowa Ct. App. Dec. 7, 2011) ("While the prosecutor's use of the word 'I' was perhaps unfortunate, in this case the statements made did not insinuate to the jury that his opinion was based on non-record facts. Each remark was related to evidence the jury would hear or did hear. . . . Thus, we cannot conclude that these statements amount to prosecutorial misconduct.").

Walter contends the prosecutor engaged in misconduct by asking the jury to consider whether Walter's witnesses would have testified the same way if this were a different kind of case:

> And I ask you, if this was an OWI case or public intoxication case, would all of his buddies be coming in here saying how drunk he was? I want you to ask yourself what their motive is here, why they're coming in here saying how drunk he was, because he's got

nothing else, folks. . . . And then [Walter] parades his buddies and his wife up here, this alleged use [of] the Xanax. Would they be doing that if this was any other kind of case?"

Walter cites no authority supporting the proposition these statements constituted prosecutorial misconduct. The issue is without merit.

Finally, Walter contends the prosecutor engaged in misconduct by misstating the law during closing argument. During closing argument, the prosecutor stated:

[D]o we have a mentally ill individual . . . incapable of forming specific intent, who hits the guy who's arguing with his buddy? Is that a colossal coincidence? The guy who evades police, does he know what's going on? I submit to you that the obvious answer is yes.

The defendant notes the instruction given to the jury provided intoxication is a defense "when it causes a mental disability which makes the person incapable of forming the specific intent. . . ." The defendant argues "mental illness" and "mental disability" are distinct and the prosecutor effectively required the jury to find the defendant had a mental illness. The prosecutor's statement was a mere stray remark, and the prosecutor did not rely on the purported distinction. Walter cites no authority supporting the proposition this constituted prosecutorial misconduct. The issue is without merit.

Even if the prosecutor had engaged in any misconduct, Walter has not established he did not receive a fair trial. *See Graves*, 668 N.W.2d at 869 ("Thus, it is the prejudice resulting from misconduct, not the misconduct itself, that entitles a defendant to a new trial."). There was strong evidence of Walter's guilt. The challenged statements were isolated and not repeated as part of an

overall theme. The jury was instructed that it should base its verdict only on the evidence and that the statements, arguments, questions, and comments by the lawyers were not evidence. *See State v. Musser*, 721 N.W.2d 734, 756-57 (Iowa 2006) (finding defendant was not prejudiced where the jury was instructed "to decide the defendant's guilt or innocence from the evidence and the law in these instructions, and that evidence did not include statements, arguments, and comments by the lawyers" (alteration omitted)); *State v. Reeves*, No. 13-0908, 2014 WL 2884864, at *4-5 (Iowa Ct. App. Jun. 25, 2014) (holding the defendant failed to establish prejudice where the evidence was strong and the jury was properly instructed to consider only the evidence). Mere stray remarks or poorly worded questions do not entitle the defendant to a new trial. "[W]e are faced with the firmly established rule that misconduct of the prosecutor does not require a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial." *State v. Mercer*, 154 N.W.2d 140, 142 (Iowa 1967). A fair trial does not necessarily mean an absolutely perfect trial. Walter's trial counsel presented a vigorous defense on Walter's behalf. Walter received a fair trial.

C.

Walter contends his counsel should have objected to the testimony of the police officer to the extent the officer provided narration regarding the events captured on the video surveillance. Walter contends the testimony usurped the role of the jury. As set forth below, Walter has not established prejudice.

D.

Walter argues his counsel was ineffective in failing to request a jury instruction regarding defense of another and reasonable force. Walter also contends his trial counsel should have requested an instruction that Walter was "under the influence." *See* Iowa State Bar Ass'n., Iowa Criminal Jury Instruction 2500.5. While we do not believe the evidence was sufficient to require these instructions and while we do not believe these instructions are consistent with the law or the defense as presented, we preserve this claim for postconviction-relief proceedings.

E.

We address a final issue common to each of the claims resolved in parts III.A.-C. of this direct appeal: the failure to establish *Strickland* prejudice. *See Graves*, 668 N.W.2d at 869 (providing the failure to prove prejudice is fatal to an ineffective-assistance claim). Whether the claimed errors are considered individually or cumulatively, we conclude Walter failed to establish *Strickland* prejudice. *See Clay*, 824 N.W.2d at 501 (discussing cumulative prejudice). As set forth above, the only issue for trial was whether Walter had the specific intent to cause Kriener serious injury. There was overwhelming evidence from which the jury could have inferred such intent, including: the testimony of the bartender and investigating officer, both of whom testified Walter was alert and aware; Walter's ability to walk across the bar and strike the victim; Walter's decision to pick up a glass from a table while approaching the victim; Walter's use of a dangerous weapon in striking the victim; the severity of the injury; and Walter's

ability to leave the bar and seek medical attention. Given these facts, there is no reasonable probability the result of the proceeding would have been different even assuming trial counsel breached an essential duty. *See State v. White*, 668 N.W.2d 850, 859-60 (Iowa 2003) (denying ineffective-assistance claim where there was overwhelming evidence of specific intent to inflict serious injury); *Sager v. State*, Nos. 9-477, 98-1108, 1999 WL 775941, at *1-2 (Iowa Ct. App. Sep. 29, 1999) (denying ineffective-assistance claim where there was overwhelming evidence establishing specific intent, including the nature of the injuries).

## IV.

We have considered each of the defendant's claims and permutations of the same. For the foregoing reasons, we affirm the defendant's conviction and sentence. We preserve for postconviction-relief proceedings Walter's claim regarding the failure to request certain jury instructions.

**AFFIRMED.**