# IN THE COURT OF APPEALS OF IOWA

No. 23-1280
Filed February 5, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MICHAEL KENNETH HINNERS,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Calhoun County, Derek Johnson,

Judge.


Michael Hinners appeals his involuntary manslaughter conviction after a

bench trial claiming the district court erroneously failed to consider his intoxication

defense.  **AFFIRMED.**


Christopher Kragnes, Sr., Des Moines, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.


Considered by Greer, P.J., Buller, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**DOYLE, Senior Judge.**

Michael Hinners was charged with first-degree murder after shooting and killing his brother. He waived his right to a jury trial. After a bench trial, the court found Hinners guilty of involuntary manslaughter, a lesser included offense. Hinners argued in his post-trial motions that his rights were violated because the district court failed to address his affirmative defense of intoxication. After his motions were denied and judgment entered, Hinners appealed raising the same intoxication issue. We conclude the affirmative defense of intoxication is not applicable to the crime to which Hinners was convicted, so we affirm.

The district court's findings of fact follow:

> On April 9, 2022, [Hinners] and his brother, [Anthony], spent the day hunting and consuming alcohol. During the afternoon hours, the two brothers returned to [Hinners]'s residence at 210 South Ontario, Pomeroy, located in Calhoun County. Both brothers were heavily intoxicated. At some point in the early evening, Anthony decided it was time to leave, but his car would not start. It was believed that Anthony's battery was drained as a result of the car's dome light being left on. Shortly thereafter, the two brothers began arguing about the car's dead battery.
>
> Meanwhile, Ray Chick was sitting in his home across the street watching TV. Ray's evening was interrupted when [Hinners] knocked on the door and asked if Ray had a jump box. Ray informed [Hinners] that he did not have a jump box, but he had a battery charger capable of starting Anthony's car.
>
> Ray located the battery charger and walked to [Hinners]'s residence. Upon arrival, [Hinners] told Anthony to move the car so that the cord of the charger could reach the vehicle. Anthony responded by calling [Hinners] an "idiot" and explained that the car would not start. [Hinners] repeatedly told Anthony to move the car. Anthony, who was obviously frustrated that [Hinners] was not grasping the concept that a car with a dead battery cannot be moved to a location where the battery charger could reach, continued to argue and call [Hinners] names.
>
> Ray, recognizing that the two brothers' argument was not going to resolve itself, decided to leave to retrieve an additional extension cord from his residence. Ray returned with the cord and dropped it in front of Anthony's car. Ray then walked to the outlet

where [Hinners] had previously plugged in a different cord. Ray attempted to explain to the two brothers that his extension cord was going to solve the brothers' current problem and that the car would eventually start.

As Ray was walking back towards [Hinners]'s house, he heard a gunshot. Ray's attention immediately went to Anthony and Ray witnessed Anthony drop to the ground on his back. From the angle of where Ray was standing, he could not see into the house, but he could see a puff of smoke at the entrance of the house. Ray could not see a gun or the [Hinners].

[Hinners] immediately exited his residence and kneeled down next to Anthony. Ray asked [Hinners], "Is he okay?" [Hinners] asked Ray to call for help and stated that he had accidentally shot his brother. Ray went across the street to his residence and called 911 and remained on his front step until law enforcement and medical assistance arrived.

Pomeroy Police Chief Lorie Gerdes was the first law enforcement officer to arrive at [Hinners]'s residence. Upon her arrival, Chief Gerdes observed [Hinners lying] on his right side next to Anthony. Chief Gerdes pulled out her firearm and asked Defendant to move out of the way. [Hinners] did not move. Chief Gerdes grabbed [Hinners]'s jacket and pulled him away from Anthony. Chief Gerdes observed that Anthony was not moving or breathing. Defendant repeatedly stated to Chief Gerdes, "Get him alive. Get him alive. Where's the ambulance?" Chief Gerdes performed CPR on Anthony, and [Hinners] remained lying next to Anthony. [Hinners] was crying. Chief Gerdes asked [Hinners] multiple times where the gun was, but [Hinners] refused to provide the gun's location. The gun was ultimately located by law enforcement just inside [Hinners]'s front door. The gun was leaned up against the inside frame of the door.

[Hinners] provided a statement to law enforcement and explained that he was sitting on his bed cleaning his gun when Anthony walked into the house. [Hinners] claimed that the gun accidentally discharged and Anthony was shot.

In its conclusions of law, the district court found the following facts were proven

beyond a reasonable doubt:

On April 9, 2022, in Calhoun County, Iowa, [Hinners] and his brother, Anthony, were attempting to start a car. The two brothers were engaged in a heated argument outside [Hinners]'s home. [Hinners], out of frustration, went into his residence and retrieved a firearm, specifically a Harrington and Richardson 10-gauge shotgun. While standing just inside his front door, [Hinners] intentionally pointed the firearm at Anthony's chest while Anthony was still standing outside

the house at the bottom of [Hinners]'s front porch steps. The eyewitness testimony of Ray Chick placed [Hinners] at the bottom of the steps when he was shot and Ray Chick's observation of smoke at the front door established that [Hinners] was at the top of the stairs just inside the front door when the gun was fired. The testimony of Dr. Kelly Kruse corroborated Ray Chick's testimony. Dr. Kruse testified that the trajectory and direction of Anthony's wound path, which went downward, established that the shot would have come from above him. Common sense further dictates that a gunshot wound in [and] of itself provides compelling evidence that the gun was pointed towards the location of the wound.

While the gun was intentionally pointed at Anthony, the gun discharged and Anthony was shot in the chest. [Hinners] immediately put the gun down and ran to Anthony's location. [Hinners] was upset and requested Ray Chick to call 911. [Hinners] immediately described the shooting as an accident and has maintained that position since April 9, 2022.

In its first-degree murder and second-degree murder analysis, the court did note:

[Hinners] was heavily intoxicated to the point where [Hinners] could not comprehend that a car with a dead battery could not be started and moved. Dr. Mace Beckson testified that [Hinners]'s blood alcohol level would have exceeded .300 near the time of the shooting. Iowa law, specifically Iowa model jury instruction 2500.5, recognizes that individuals under the influence will experience loss of bodily control and mental ability. The court certainly questions [Hinners]'s mental ability to immediately formulate a falsified defense that an intentional killing was actually an accident.

After finding Hinners not guilty of first-degree murder and second-degree murder, the court next considered and found Hinners not guilty of the offense of voluntary manslaughter. Lastly, the court considered the lesser included offense of involuntary manslaughter by public offense. It concluded:

The State must prove all of the following elements of Involuntary Manslaughter:
1. On or about the 9th day of April, 2022, [Hinners] recklessly committed a public offense.
2. When the [Hinners] committed the public offense, the Defendant unintentionally caused the death of Anthony Hinners.
Iowa Code section 708.1(2)(c) [(2022)] defines the public offense of assault as the intentional pointing of a firearm towards another. The evidence established beyond a reasonable doubt that

on April 9, 2022, [Hinners] committed the general intent crime of assault by intentionally pointing a firearm at Anthony Hinners.

A person is "reckless" or acts "recklessly" when said person willfully disregards the safety of persons or property. It is more than a lack of reasonable care which may cause unintentional injury. Recklessness is conduct which is consciously done with willful disregard of the consequences. For recklessness to exist, the act must be highly dangerous. In addition, the danger must be so obvious that the actor knows or should reasonably foresee that harm will more likely than not result from the act.

The court finds that the act of pointing a 10-gauge shotgun at another individual while intoxicated is highly dangerous and constitutes recklessness. Furthermore, such an act demonstrated a willful disregard of Anthony Hinner's safety. [Hinners] frequently used firearms and should be well aware that an intoxicated person pointing a gun at another individual constitutes a dangerous and lethal combination and that resulting harm is reasonably foreseeable. The court finds that each and every element of involuntary manslaughter by public offense was proven beyond a reasonable doubt, and [Hinners] is hereby found guilty of involuntary manslaughter, a class "D" felony, in violation of Iowa Code section 707.5(1)(a).

On appeal, Hinners does not dispute that he caused the death of his brother, but he argues it is also undisputed that he was too intoxicated to form specific intent, which the trial court failed to consider. "It has long been the general rule in Iowa that, although voluntary intoxication cannot constitute a defense to a crime, it may negate criminal intent if such intent is an element of the crime charged." *State v. Caldwell*, 385 N.W.2d 553, 557 (Iowa 1986). The district court found the public offense element of involuntary manslaughter—assault by intentionally pointing any firearm toward another—to be a general intent crime. Intoxication is not a defense to a general intent crime. "From the beginning, the [intoxication] defense has been applied in Iowa only to specific-intent crimes, not those of general intent." *See State v. Guerrero Cordero*, 861 N.W.2d 253, 259 (Iowa 2015), *overruled on other grounds by Alcala v. Marriott Intern., Inc.*, 880

N.W.2d 707–08 (Iowa 2016). However, Hinners argues assault is a specific intent crime subject to the intoxication defense.

The question boils down to whether the specific assault offense relied upon by the district court—intentional pointing of a firearm toward another, Iowa Code § 708.1(2)(c)—is a general-intent or specific-intent crime. The assault statute provides, in part:

> 2. A person commits an assault when, without justification, the person does any of the following:
> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, or offensive, coupled with the apparent ability to execute the act.
> c. Intentionally points any firearm toward another or displays in a threatening manner any dangerous weapon toward another.

Iowa Code § 708.1(2)(a)–(c). Our legislature has stated that "assault" as defined in [section 708.1] is a general intent crime." Iowa Code §708.1(1). Notwithstanding, the case law makes it clear that assaults under paragraphs (a) and (b) are specific-intent crimes. *See State v. Fountain*, 786 N.W.2d 260, 263–65 (Iowa 2010); *State v. Beck*, 854 N.W.2d 56, 60–64, 66 (Iowa Ct. App. 2014); *Easton-Cole v. Williamson*, No. 22-0734, 2023 WL 2671910, at *2 (Iowa Ct. App. Mar. 29, 2023).[1] "'Specific intent' means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind." Iowa

---

[1] *See also State v. Clark*, No. 23-1313, 2024 WL 5153099, at *6 (Iowa Ct. App. Dec. 18, 2024) ("Assault is a specific-intent crime." (quoting *State v. Krogmann*, 998 N.W.2d 141, 158 (Iowa 2023)). *Krogmann* concerned only the first and second alternatives of assault, not the third alternative. *See* 998 N.W.2d at 159 (confronting "the precise question presented" in *Beck*). *Clark* also concerned assault only under paragraphs (a) and (b). 2024 WL 51553099, at *6.

Crim. Jury Instruction 200.2. "Because the elements of these [first two] assault alternatives include an act that is done to achieve the additional consequence of causing the victim pain, injury or offensive physical contact, the crime includes a specific intent component." *Beck*, 854 N.W.2d at 63.

Our supreme court has not yet addressed whether assaults under section 708.1(2)(c) require proof of general or specific intent, but this court's published and unpublished decisions suggest the third definition of assault is a general-intent crime. *See id.* at 66 (holding a 2002 legislative amendment, now codified at Iowa Code section 708.1(1), which expressly states assault is "general intent crime," had "continued effect" because it applied to third alternative means of commission)[2]; *see also State v. Allen*, No. 19-1509, 2021 WL 211133, at *4 (Iowa Ct. App. Jan. 21, 2021), *aff'd on other grounds*, 965 N.W.2d 909, 912 (Iowa 2021); *State v. Phipps*, No. 17-1653, 2018 WL 4638351, at *3 (Iowa Ct. App. Sept. 26, 2018); *State v. Meek*, No. 16-0797, 2017 WL 706334, at *5 (Iowa Ct. App. Feb. 22, 2017).

The third alternative means of assault under section 708.1(2)(c)—intentionally pointing any firearm toward another—was identified by the district court as the predicate public offense element to Hinners's involuntary manslaughter offense. Unlike the first two means of assault under paragraphs (a) and (b) of section 708.1(2), intentionally pointing any firearm toward another does

---

[2] As a published opinion, *Beck* is controlling authority. *See In re J.C.*, No. 18-1514, 2018 WL 6719418, at *5 (Iowa Ct. App. Dec. 19, 2018) (citing *Webster v. State*, No. 17-0539, 2018 WL 3873411, at *2 n.4 (Iowa Ct. App. Aug. 15, 2018)); *see also State v. Laub*, 2 N.W.3d 821, 828 (Iowa 2024) (stating "the district court was duty-bound to apply" a published court of appeals decision).

not include an act that is done to achieve an additional consequence, nor does it require doing the act with a specific purpose.[3]  Coupled with the section 708.1(1) statement that "[a]n assault as defined in this section is a general intent crime," this leads us to conclude the act of assault in this case, intentionally pointing a firearm at another, the predict public offense as identified by the district court, is a general intent crime.  Involuntary manslaughter, without a specific-intent element, is a general-intent crime.  Thus, the intoxication defense is not available to Hinners.  In identifying the underlying public offense to the involuntary manslaughter offense, the district court correctly concluded that Hinners, in pointing a firearm at his brother, committed a general-intent crime.  So, the district court committed no error in not addressing the intoxication defense.  Substantial evidence supports Hinners' involuntary manslaughter conviction.  We therefore affirm.

**AFFIRMED.**

---

[3] *See* Kermit L. Dunahoo, *The New Iowa Criminal Code: Part II*, 29 Drake Law Rev. 495, 497 (1980) (suggesting assault by intentionally pointing a firearm toward another does not "require proof of any specific intent and "[t]hus, the defendant's *purpose* in pointing the firearm is irrelevant" (emphasis in original)).